# Pittsburgh, Allegheny and McKees Rocks Railway Co. v. Township of Stowe, Appellant.

*Equity—Injunction—Jurisdiction—Procedure—Taxation—Railroads—Common carriers—Real estate—Local taxation—Pleadings.*

1. Equity has jurisdiction to restrain the collection of taxes where there is want of power to tax or the tax is levied without authority at law.

2. An injunction restraining a local taxing authority from the collection of taxes on land of a railroad company is properly granted where the evidence shows that the land in question is necessary, essential and indispensable to the exercise of the franchises of the company as a common carrier.

3. Where any specific portion of such property is not taxable, the taxing officers are without warrant of law to impose and collect the tax on the nontaxable part, and their official acts are as void as to that part of the property as they would be if the taxes had been illegally levied against the entire holdings of the company.

4. In such case while manifest want of jurisdiction in equity may be taken advantage of at any stage of the proceeding, yet as the question must be determined by what is averred in the bill and not by what is disclosed in the answer and the evidence in support of it, it should be raised in doubtful cases in limine, by demurrer, plea or answer.

5. A bill in equity was filed by a railroad company against a local taxing authority to enjoin the collection of local taxes imposed by the taxing authority upon a portion of certain real estate held by the railroad company. It appeared that the railroad company under its charter was a common carrier and the chancellor found upon competent testimony that the portion of the ground as to which the railroad company claimed exemption was used by the railroad company for its railroad purposes and was necessary thereto. *Held,* that the relief prayed for was properly granted.

Argued Oct. 22, 1915. Appeals, Nos. 220, 238 and 241,

Oct. T., 1915, by defendants, from decrees of C. P. Allegheny Co., Nos. 427, 419 and 426, July T., 1913, in Equity, granting injunctions in cases of Pittsburgh, Allegheny & McKees Rocks Railway Company, a corporation of the State of Pennsylvania, v. Township of Stowe, a Municipal Corporation, and M. J. Sullivan, treasurer of said Township, Pittsburgh, Allegheny and McKees Rocks Railroad Company, a Corporation of the State of Pennsylvania, v. School District of the Township of Stowe, a Municipal Corporation, and M. J. Sullivan, Treasurer of said School District, and Pittsburgh, Allegheny and McKees Rocks Railroad Company, a Corporation of the State of Pennsylvania v. County of Allegheny, a Municipal Corporation, Frank J. Harris, Treasurer of said county, William C. McEldowney, delinquent tax collector, of said county, and M. J. Sullivan, a delinquent collector for said county. Before BROWN, C. J., MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Bills in equity for injunctions. Before HAYMAKER, J.

From the record it appeared that the facts found by the trial judge were substantially as follows: The plaintiff is a corporation formed by the consolidation and merger of three other railroads incorporated under the General Railroad Act of April 4, 1868, P. L. 62. It owns and operates lines of railroad in the City of Pittsburgh and in Stowe Township, Allegheny County. In 1910, the Pressed Steel Car Company for an expressed consideration of $238,000.00 conveyed to the plaintiff the easement, or right of way, for the construction, maintenance and use of a railroad upon a certain piece of land in Stowe Township, Allegheny County, containing 47.7 acres. The line of plaintiff's railroad connects at one end with the tracks of the Pittsburgh and Lake Erie Railroad Company, and at the other end with the tracks of the Pittsburgh, Chartiers and Youghiogheny Railroad Company. During the years 1911 and 1912, the plain-

tiff company, being an incorporated industrial railroad, had and used about nine engines and one hundred and twenty-five cars, and employed about sixty-seven men. It maintained on the land a main or standard gauge track, and an elaborate system of light gauge switch tracks over which plaintiff, by its own motive power, locomotives and employees, served four industrial concerns, owning and operating large plants practically surrounding the land on which the tracks are located. The plaintiff's tracks ran to and connected with those plants, and it performed switching service between one industry and another, and practically all the switching service between those industries and the main trunk lines of the railroads above-mentioned. The plaintiff was compensated for these services by certain charges or tariffs, and it also charged demurrage against the various companies it served. It switched coal cars from the trunk lines to a coal company which retailed coal. The shipments received and dispatched by the plaintiff were both intrastate and interstate. Its main tracks, switching tracks, turnouts, track scales, roundhouses, machine shops, yards, etc., covered in a great measure all the land described in the deed to it. It maintained no passenger or freight depots or stations. During 1911 and 1912, plaintiff used by way of easement all the land conveyed to it except 12.54 acres, being 35.1 acres, for tracks, yards, roundhouses, etc., and the same was necessary, essential and indispensable to it in the exercise and performance of its franchises, and is a part of its capital stock on which it pays taxes to the State. It derives no revenue from the land other than from the purposes for which the company was organized. The plaintiff was created for and exercises public functions. The various industrial concerns served by it are separate corporate organizations but closely affiliated in business. The organization owning the Pressed Steel Car Company owns the plaintiff railroad, and that company and the two other companies were under one

management. The plaintiff filed a schedule of tariffs, with the Interstate Commerce Commission, makes annual reports to that commission and to the Pennsylvania Railroad Commission, and pays a tax on its capital stock. In the years 1911 and 1912 the township and school district of Stowe and the County of Allegheny assessed all of the plaintiff's land for the purposes of local taxation and levied a tax thereon. The plaintiff tendered to the proper officials of the defendants the taxes on the 12.54 acres on which it claimed no exemption, which were refused. These bills were filed to restrain the collection of the taxes on the part of the land claimed to be exempt.

Further facts appear by the opinion of the Supreme Court.

After hearing, the court entered the decree prayed for perpetually enjoining the collection of the taxes complained of. Defendants appealed.

*Error assigned* in each case, inter alia, was the decree of the court.

*Joseph R. Conrad,* of *Eckles & Conrad,* for Township of Stowe and M. J. Sullivan, appellants.

*George C. Bradshaw,* with him *G. R. Speer* and *A. B. Hay,* for School District, County of Allegheny, M. J. Sullivan, Frank J. Harris and William C. McEldowney, appellants.

*William A. Seifert,* with him *Reed, Smith, Shaw & Beal,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:
These are three bills in equity filed by the plaintiff railroad company against Stowe Township, Allegheny County, the school district and the county, respectively, and their treasurers and collectors, to restrain them

from collecting taxes for 1911 and 1912 levied upon 35.181 acres of land in the township for local purposes, and to adjudge the assessment and levying of the taxes to be null and void. The plaintiff avers as the ground for the relief prayed for that the land is owned by it, is necessary, essential and indispensable to it in the exercise and performance of its franchises and public duties as a common carrier, and is represented by its capital stock upon which State taxes were and are paid. The questions involved in the three cases are the same. The cases were heard on bill, answer, replication and proofs. There were no requests for findings of fact or conclusions of law made by the defendants, and the numerous requests presented by the plaintiff were the same in each case, except that the fifteenth request for finding of fact in the township case gives details as to the business of the various companies served by the plaintiff railroad. The court disposed of all cases in one opinion, and decrees were entered in each case granting the relief prayed for. From these decrees the defendants have appealed.

The assignments of error filed by the school district differ from those filed by the township. No assignments on behalf of the county are printed in the appellants' paper-book. The question raised on the appeals of the school district and county is whether the land in question is exempt from local taxation; and on appeal by the township the additional question is raised whether a bill in equity will lie, under the facts of the case, to enjoin the collection of taxes levied for local purposes. The cases may be disposed of on these two questions without reference to the numerous assignments of error. The assignments in both cases are defective and might be disregarded for the reasons correctly stated in the appellee's paper book, except the assignment in each case to the final decree of the court below. Had the appellee moved to quash the defective assignments at the argument of the cases, the motion would have prevailed. We

have time and again admonished counsel of the risk they take for their clients in violating the rules of court in this respect, and that compliance with these rules is necessary to enable the court to properly dispose of the litigation before it.

The learned chancellor, in his opinion and answers to plaintiff's requests, has found the facts and stated his conclusions of law, and a summary will appear in the reporter's notes. It is only necessary to state here his findings that the plaintiff company is a corporation formed by the consolidation and merger of three railroad companies which were organized under the General Railroad Act of 1868, that it was created for and exercises public functions, that it owns by way of easement in Stowe Township 47.7 acres of land, and in the years 1911 and 1912 for which taxes are claimed, used all the property, except 12.54 acres, or 35.1 acres, for railroad purposes.

It is clear that if the evidence warranted the court's findings of fact, the 35.1 acres of land were exempt from taxation for local purposes. It is denied, however, by the defendants that the evidence shows that all the land the plaintiff occupies with its tracks is railroad property and exclusively used for railroad business. It is claimed on the part of the defendants that the findings of the court are based solely upon the fact that the plaintiff had a charter authorizing it to construct and operate a railroad and "was acting in all respects as a railroad company," and not upon the proof that the land occupied by the plaintiff was actually and exclusively used for railroad business.

The question of jurisdiction of the court might be disposed of on the ground that it was not raised by defendants until after the testimony had been taken and the cases called for argument and practically ready for adjudication on their merits in the court below. The defendants did not demur, nor did they suggest want of jurisdiction in their answers. While manifest want of

jurisdiction in equity may be taken advantage of at any stage of the proceeding, yet as the question must be determined by what is averred in the bill and not by what is disclosed in the answer and the evidence in support thereof it should be raised in doubtful cases in limine, by demurrer, plea or answer. We have no doubt, however, that a bill in equity will lie in this case to restrain the assessment and collection of taxes for local purposes if the taxing authorities had no power to levy and collect the taxes. If, as contended by the plaintiff company, the land in question is necessary, essential and indispensable to the exercise of its franchises as a common carrier, and is thereby not subject to taxation for local purposes, the bills in these cases may be maintained. Where there is a want of power to tax or the tax is levied without authority of law, a bill in equity will lie to restrain its collection: St. Clair School Board's App., 74 Pa. 252; St. Mary's Gas Co. v. Elk County, 168 Pa. 401; Byers v. Hempfield Township, 226 Pa. 278. If the tax is lawful but the manner of collecting it is oppressive or unfair, or there are technical irregularities in the assessment, the remedy is at law and by an appeal from the assessment. Here, if the court's findings of fact are correct, the property in question is not subject to local taxation, and the taxing officers had no power to levy the taxes on the land in question. The cases at bar would, therefore, fall within the uniform rulings of this court that equity has jurisdiction to grant relief and to enjoin the collection of the taxes. The defendants contend, however, that there is a distinction between the case where the owner has no property subject to taxation and where, as here, the owner admits that part of his property is taxable. We fail to see that there is any distinction in principle which would confer jurisdiction on a court of equity in the one case and not in the other. If any specific portion of the property is not taxable, the taxing officers are without warrant of law to impose and

collect the tax on the non-taxable part, and their official acts are as void as to that part of the property as they would be if the taxes had been illegally levied against his entire holdings. The reason of the rule conferring jurisdiction on equity to adjudicate the question makes it alike applicable to both cases. The question has been raised in this and other states and the jurisdiction has been sustained: Western N. Y. & Penna. Ry. Co. v. Venango County, 5 Pa. Superior Ct. 304; Bell Telephone Co. of Penna. v. Harrisburg, 53 Pa. Superior Ct. 458; Siegfried v. Raymond, 190 Ill. 424. In the cases at bar, the tax was levied upon the entire tract owned by the plaintiff company which admitted its liability on a specific portion and filed a bill to restrain collection of the taxes upon the remainder, also a specified portion, on the ground that the authorities had no power to tax the remainder. The company also tendered to the proper taxing officer the amount of tax due on the portion which it admitted was subject to local taxation. There was, therefore, no difficulty in separating the taxable from the non-taxable land. We have examined the cases referred to by defendants and are of opinion they do not sustain their contention. The question of the jurisdiction of equity to restrain the collection of an unlawful tax is not considered in either of the cases.

The other and controlling question in the case is whether the particular piece of ground for which exemption is claimed is essential and indispensably necessary to the operation of the railroad as such, and is being used by it in good faith for railroad purposes. The learned court below, as has been observed, has so found as a fact from the pleadings and evidence in the case, and the question must be answered in the affirmative if the court's findings are sustained by the evidence. We have examined the case with care and are satisfied that the court's conclusions are fully justified by the evidence. It is contended on behalf of the defendants that the burden was on the plaintiff company to show that each and

every part of the entire property was used for railroad purposes and, therefore, exempt from taxation, and that the burden was not discharged because its witnesses gave only general conclusions to the effect that the whole 35 acres were essential to the business of the railroad without stating the facts in detail on which the conclusions were based. It is claimed that such conclusions are not evidence of facts upon which the court could properly base any findings, and that from the testimony introduced by the defendants and from admissions made by plaintiff's witnesses, it appeared that plaintiff's entire business consisted in switching cars for the Pressed Steel Car Company, which also used large portions of the tracks in repairing and painting its cars. This contention is not justified by the evidence. The plaintiff's testimony was admitted without objection, and there was no attempt to exclude it because it was simply the conclusion of the witnesses and not a statement of facts. The witnesses were cross-examined at length and every opportunity was given to test their knowledge of the matters as to which they testified. The vice-president and manager of the plaintiff company testified that the 35 acres for which exemption is claimed are used exclusively and are absolutely necessary for railroad purposes, that the plaintiff received no revenue from the property except for railroad purposes, that the main and side tracks on the property were standard gauge, that they connected with two trunk lines, that the trackage consisted of the main line and switches, and that plaintiff served several concerns outside the four industrial plants. The plaintiff's consulting engineer testified that the plan in evidence showed the tracks, the arrangement of the railroad with reference to the premises and the parts of the property owned and used by the industrial plants, that the property of the plaintiff is used for main tracks and sidings, team tracks, scales and repair shops used exclusively for making the company's own repairs, coaling dock and water-plugs, and that it was absolutely

necessary for the exercise of the railroad company's franchises. The secretary and auditor of the company testified to the number of in-bound and out-bound shipments of freight in the years 1911 and 1912 for which the taxes are claimed, that the whole property is absolutely necessary for railroad purposes, and is used for no other purpose, and that plaintiff receives no revenue from the property other than for railroad purposes. It also appeared by uncontradicted evidence that the plaintiff is a member of the American Railway Association, membership in which is confined to bona fide railroads; that it complies with the regulations of the Interstate Commerce Commission and the Pennsylvania Railroad Commission as to reports, tariffs, etc.; that the shipments handled by it are both intra-state and inter-state; that its tracks are connected with two trunk lines; that engines of the companies operating those lines at times use its tracks; that it was willing and ready to receive and deliver freight for any one; that it did, in fact, perform these services for others than the four companies whose industrial plants were adjacent to its tracks; and that it regularly switched car-loads of coal for a company which conducted a retail coal business in no way connected with the four industrial plants. There is no evidence that the plaintiff ever refused service to anyone. It also appears by the evidence that the service rendered by plaintiff to the four manufacturing companies and the coal company was receiving the inbound freight consigned to the various industrial plants from the trunk line connections, placing it at the plants, and removing the empty cars and taking them back to the trunk lines. The evidence shows that the owners of the Pressed Steel Company were the owners of the railroad company and a large part, but not all, of the business of the railroad company was the switching necessary for the prosecution of the work of the Pressed Steel Car Company.

This testimony was not met or overcome by the testi-

mony of the defendants which, at the utmost, tended to show that at times some of the tracks were used by the Pressed Steel Car Company in painting and carpenter work on their cars, that at times the tracks were used for the transfer of material from one building to another and the changing of partly finished cars from one building to another. It did not appear, however, from this testimony that the tracks used for these purposes were not necessary for the plaintiff's business or were not used by it in its business as a common carrier. The use of these tracks for the purposes suggested in the defendant's testimony was fully explained by the testimony of the manager of the plaintiff company. Without further reference to the evidence in the case, we think it amply sustains the findings of the learned chancellor that the whole of the land for which exemption is claimed is necessary, essential and indispensable to the plaintiff company in the exercise and prosecution of its public functions as a common carrier, and that it was used for that purpose.

The legal conclusions of the learned chancellor on the facts found by him are fully sustained by numerous recent cases, some of which are Getz's App., 10 W. N. C. 453; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Conoy Twp. Sup'rs v. York Haven Electric Power Plant Co., 222 Pa. 319; Scranton Gas & Water Co. v. Delaware, Lackawanna & Western R. R. Co., 225 Pa. 152; Vinton Colliery Co. v. Blacklick & Yellow Creek R. R. Co., 226 Pa. 131; Crane R. R. Co. v. Central R. R. Co. of N. J., 248 Pa. 333; United States v. Louisiana & Pac. Ry. Co., 234 U. S. 1. These cases arose under facts which make them applicable to the questions involved in the case at bar. The plaintiff company was chartered under the General Railroad Act of April 4, 1868, P. L. 62, and its supplements, and possesses the powers and franchises conferred by those statutes. It is, therefore, authorized to take and hold such real estate as is essentially and indispensably necessary for the exercise of its

franchises.  If the land in question is being used by the plaintiff in the business authorized by its charter, it is a public use. It may be that when the charter was obtained for the company it had in mind the service to be rendered to the Pressed Steel Car Company and its subsidiary companies, or to its own private interests.   The testimony, if believed, shows that a large part of the business of the company was serving the industrial plants adjacent to its tracks.   For these and similar reasons the defendants contend that the real estate in question is not being used by the plaintiff in the exercise of the public functions of a railroad company, but to assist these private manufacturing corporations in their business.   These facts, however, do not show that the plaintiff is not a common carrier, or that it is not using the land in question in its business as a common carrier. The Scranton Gas & Water Co. v. D., L. & W. R. R. Co., supra, was a bill for an injunction to restrain the taking of land to straighten the company's line.   It was there said: "It is of no consequence that the railroad company had in mind other advantages, or that these were the controlling considerations, without which the improvement would not have been entered upon......If authorized by its charter to do the thing complained of, the authority of the court is at an end, no matter what latent design may be developed."   Getz's App., supra, was a bill to restrain the building of a side track 600 feet long by a carrier to an iron works owned by private parties. The court said: "We cannot assent to the opposing contention which holds that a side track, which leads only to a manufacturing or mining establishment, held in private ownership, is illegal because it does not subserve a public use."   In United States v. Louisiana & Pac. Ry. Co., supra, one of the tap line cases, the question was whether the several railroads varying from one mile to eight miles in length and originally constructed as private logging roads were common carriers as well of proprietary as non-proprietary traffic, and as such were en-

titled to participate in joint rates with other common carriers. In the opinion it is said: "It is insisted that these roads are not carriers because most of their traffic is in their own logs and lumber, and that only a small part of the traffic carried is the property of others. But this conclusion loses sight of the principle that the extent to which a railroad is in fact used, does not determine the fact whether it is or is not a common carrier. It is the right of the public to use the road's facilities and to demand service of it rather than the extent of its business which is the real criterion determinative of its character."

The inquiry here is not whether the plaintiff company is exceeding its powers or failing to perform its duties to the public as a common carrier, but whether, under its charter, it has the power and authority of a common carrier and as such the right to take and hold the land in question for its use as a carrier. If the plaintiff is exceeding or not exercising in good faith its corporate powers or fails to perform the duties required of it as a public corporation, the remedy is by appropriate proceeding instituted by the Commonwealth. If, as contended by the defendants, the plaintiff company has not the proper facilities for carrying passengers and declines to perform this or any other corporate duty, the State may compel it to perform its public functions or forfeit its charter. With such questions, however, we cannot deal in this proceeding.

In each of these appeals, the decree is affirmed.