## Lehigh Valley Railroad Company v. Ruggles et al.

*Taxation — Railroads — Repair-shops—Local taxation—Equity—Jurisdiction—"Manufacturing"—"Repairs."*

1. The repair-shop of a railroad company, used exclusively for repairs of its own locomotives and cars and not engaged in the manufacture of new equipment, is not liable to local taxation, where it appears that such repairs are indispensably necessary for the successful prosecution of the railroad company's business.

2. Such use of premises is not manufacturing.

3. To manufacture is in a sense to create a new identity, to fashion a new product, such, as for example, to use raw materials and convert them into suitable forms for use. "To repair" is in no sense to create a distinct entity.

4. A court of equity has jurisdiction to restrain by injunction the collection of a local real estate tax assessed against the repair-shops of a railroad company used for the repair of the equipment indispensably necessary for the operation of the railroad.

5. In such case, there is no adequate remedy at law.

6. The fact that a portion of the property had in previous years been in the taxable class is not material.

Bill in equity. C. P. Bradford Co., Sept. T., 1923, No. 1.

*Lilley & Wilson,* for plaintiff.

*R. A. Mercur* and *C. M. Culver,* for defendants.

MAXEY, J., 45th judicial district, specially presiding, Dec. 12, 1924.—This case comes before us upon a bill in equity, praying to restrain the above-named defendants from collecting from the plaintiff or from any of its property in the 3rd Ward of Sayre, Pa., certain taxes assessed and levied for the year 1923 against said property, and directing the defendants to remove from the list of valuations or property to be assessed for local purposes in the Borough of Sayre the twelve acres of land and the buildings and constructions thereon described in the bill.

The bill sets forth that the plaintiff is a corporation duly organized, etc., and that it owns certain locomotives and cars and operates a railroad extending from Jersey City, N. J., to Buffalo, N. Y., and passing through Bradford County; that at Sayre, Bradford County, Pa., it maintains such necessary repair-shops equipped with adequate and necessary machinery and appliances as, in the judgment of the managers of the complainant, are indispensably necessary to discharge its duty as a common carrier. The bill further sets forth:

"5. The said shops and repair-yards are located on a tract of about twelve acres of land, upon which are constructed the necessary buildings and structures and appliances for the repair of the equipment of the complainant, and are such as are ordinarily and properly appurtenant to the railroad and are a portion of its public works, and are all necessary, essential and indispensable to the exercise of its franchise as a common carrier, and all of the said ground, shops, equipment and appliances are used exclusively for the said purposes and are indispensably necessary therefor, and no revenue is derived therefrom except such as is incident to its functions as a common carrier.

"6. The said tract of twelve acres of land, with the buildings and other structures referred to in the previous paragraph, are located in the 3rd Ward of Sayre Borough and are valued and taxed as a part of the capital stock of the complainant by the Commonwealth of Pennsylvania, and the same are not liable to assessment and valuation for local taxation."

The defendants demurred to the bill and set forth:

"1. That upon the face of said bill the plaintiff is not entitled to the relief claimed.

"2. That upon the face of the bill it appears that the defendants are not liable to the plaintiff in any way.

"3. That the plaintiff has not, in or by its said bill, shown any cause entitling it to the relief prayed.

"4. That this court has no jurisdiction of the said bill, because upon the face of the bill it appears that the plaintiff had an adequate remedy at law."

This demurrer was overruled by us in an opinion filed Feb. 5, 1924, and the defendants were required to answer the bill within fifteen days. The defendants having filed an answer, the case proceeded to due hearing and is now before us for a decision upon the issues raised.

### The questions involved.

1. Are the plaintiff's shops at Sayre engaged in manufacturing?
2. If they are not, will equity restrain local assessment and taxation?

### Discussion—First question involved.

The first question to decide is whether or not the shops of the plaintiff company at Sayre, Pa., are engaged in manufacturing and so subject to taxation by the local authorities. The distinction between what is and what is not taxable locally in cases of this kind is clearly set forth in Railroad Co. v. Venango, 183 Pa. 618, in which Williams, J., said:

"Is a machine-shop belonging to a railroad company and used exclusively for repairs in its own business subject to taxation by the local authorities? This must depend upon the answer to the question whether such repairs are reasonably necessary to the successful prosecution of the business of the railroad company. If the shop is for the original construction of locomotives or cars, it is, under all our cases, subject to local taxation. A manufactory is no necessary part of the equipment of a carrying company, whether the carriage is conducted upon land or by water. Nor can a corporation engage in any other line of business than that which its charter and the general law under which it was granted authorizes. It may do the work for which it was created with as efficient and useful methods as it can command, and its preparations to serve the public and compete with its rivals are within its corporate powers, and are, therefore, covered by the taxation to which the State subjects its corporations. The application of this rule has in the main been uniform and consistent. It was stated with clearness and force in the Lehigh Coal & Navigation Co. v. Northampton County, 8 W. & S. 334, in which we held that the 'bed, berme bank and towpath of an incorporated canal are not taxable as land, . . . nor are the toll-houses and collectors' offices belonging to it and incident thereto.' The reason given was that these were a necessary part of the canal itself, without which its business could not be properly carried on. Freight and passenger depots upon the line of a railroad were considered in Northampton County v. The Lehigh Coal and Navigation Co., 75 Pa. 461. It would be possible to discharge passengers and freight into the streets and so dispense with such structures, yet we held that they were reasonably necessary to the business of the railroad company and constituted a part of its corporate machinery, properly employed by it as incident to its carrying trade. They were, therefore, not taxable by the local authorities. This rule was held in the Cumberland Valley R. R. Co. v. McLanahan, 59 Pa. 23, 29, to include all buildings required for and in use by the company in its ordinary operations, such as water stations, toll-houses, watch-houses, oil-houses and 'whatever buildings without which the railroad would not be a complete and perfect railroad.' . . . In Wayne County v.

Lehigh Valley Railroad Company *v.* Ruggles et al.

Delaware & Hudson Canal Co., 15 Pa. 351, it was applied to a water company, and its reservoir was held to be protected from local taxation as real estate. . . .

"The application of this rule to the case now before us requires us to affirm the judgment of the Superior Court, for the reason that repairs are reasonably necessary as an incident to the business of the plaintiff company. New cars are merchandise and can be bought in the market as they may be wanted. Locomotives may be obtained in the same manner, just as the need for them becomes apparent. But the almost infinite variety of breakage, due to constant wear and to the power required for the movement of cars, makes it necessary for a railroad company to maintain shops at convenient places along its line, with an adequate force of men and tools to mend and make fit for continued service all its appliances of transportation with the least possible delay. Many repairs can be made, if only the mechanics with their tools are at hand, in so short a time as not seriously to delay the movements of the cars on which they are needed; while serious delays would be the necessary result of detaching them and sending them to some general repair-shop, where they would be compelled to wait their turn for the attention needed, if such a system was compulsory upon the company. Current repairs we hold to be one of the necessities of the business of transporting passengers and freight. A shop in which such repairs are made is reasonably necessary as part of the corporate equipment of the carrying company, and cannot be taxed as real estate by the local authorities."

We have carefully examined the testimony in the case at bar and we find no evidence to support the theory of the defendants that the work of the plaintiff company in its shops at Sayre is work of construction and not exclusively work of repair. To put a new wheel on a locomotive is no more the construction of a locomotive than to put a new wheel or a new tire on an automobile constitutes the construction of a new automobile, although it may be true that without the wheel neither the locomotive nor the automobile would be able to operate as a locomotive or an automobile. Putting bolts into an engine does not constitute construction; repairing a patch in the boiler of a locomotive does not constitute construction. It is primarily and palpably a mending or repair of the locomotive.

To manufacture is in a sense to create a new identity, to fashion a new product, such as, for example, to use raw materials and convert them into suitable forms for use. He who takes iron ore and converts it into a piston-rod, or bolts, or a fire-box, or cylinders, is a manufacturer. He who takes smaller distinct physical entities and assembles them into a larger new identity, such as an engine or an automobile, is a manufacturer. To repair is in no sense to create a distinct entity. The word "repair" is defined in Webster's New International Dictionary as "to restore to a sound or good state after decay, injury, dilapidation or partial destruction, to amend." He who takes certain raw materials and from them creates artificial teeth is a manufacturer, but he who takes these artificial teeth and fits them to the cavities from which nature's teeth have decayed is only a repairer. He who from the raw materials makes the various parts of an automobile is a manufacturer. He who assembles all these various parts into a complete car has created a distinct entity and is a manufacturer. He who mends radiators, or grinds valves, or fits in new piston-rings, or who in the same car replaces a wornout carburetor with a new one, is not a manufacturer; he is only a repairer. He is not an artificer of a new physical entity, but a restorer or repairer or improver of an entity already existing.

Practically all the work done at the Sayre shops of the plaintiff company comes definitely under the class of repair work. No new entities are created except an occasional bolt or bushing or ash-pan, and the amount of work resulting from the creation of these distinct entities is so immaterial as compared with the total volume of work done by the 1000 employees of the shops as to be in this proceeding negligible. *"De minimis non curat lex."* Even most of the work testified to by defendants' witness, Lester Abbott, is repair work or work incident to repair work. To drill holes in cylinder-heads, so that these heads may be properly bolted on, is no more manufacturing than the grinding of an artificial tooth, so that it fits in the place it is intended for, makes the dentist who does the grinding a manufacturer.

When a person brings a used car to a garage for repairs, even though these repairs require the introduction into the old automobile of entirely new parts, such as magnetos, or carburetors, or wheels, or tires, it would not be held that the proprietor of the garage is manufacturing automobiles, for in the case stated the identity of the old car is still preserved. Putting a patch on a boiler is no more manufacturing than putting a patch on the inner tube of an automobile or vulcanizing the automobile-shoe is manufacturing.

In the Sayre shops of the plaintiff company engines, cars and other equipment which were found to be in a state of "decay, injury, dilapidation or partial destruction" were "restored to a sound or good state or mended," while yet preserving their original identity. It did not constitute manufacturing because in this process of restoring to a good state the company was obliged to put in new bolts, or to take a piece of steel and punch it and shape it and put it on a boiler to patch a boiler that was in a state of "decay, injury or partial destruction;" nor did it constitute manufacturing for a machinist of the plaintiff to do work such as the witness, Lester Abbott, described, that is, working at the drill-press, drilling holes, tapping out the holes, or drilling holes in cylinder-heads, then installing these cylinder-heads in a cylinder in a locomotive to take the place of an old one that was injured or worn out. To designate this as manufacturing would be as illogical as it would be to put a tube in an automobile tire, place the tube and tire on the rim and inflate it, and call that a process of manufacturing. In installing side-trunks on automobiles, it is usually necessary to drill holes in the running-board or the mud-guard and bolt the trunks to the said guards or running-boards, but this would not be called a process of manufacturing. It was testified to by plaintiff's own witnesses that occasionally bolts of an unusual size are made in the Sayre shops, and also that ash-pans are occasionally made, but it is very evident that the entire volume of this sort of manufacturing is inconsequential compared with the entire volume of work done in the Sayre shops. Such manufacturing certainly does not constitute, under the evidence 3/23 of the entire work of the plaintiff company, or even 1 per cent. of 3/23 of the entire work of the plaintiff company, and the assessment complained of in this proceeding is made on the theory that 3/23 of all the work done in the Sayre shops is work of manufacturing. This allegation is clearly not sustained by the evidence. On the contrary, it is clearly negatived by all the evidence in the case. Even defendant's own witness, Lester Abbott, did not testify to any examples of work that could justly be termed manufacturing. (Transcript, page 58.) Most of the material that he worked on was new material. His work on the new material consisted mainly of drilling and tapping out holes. This was certainly not manufacturing material or manufacturing parts; even though the company's shops did render the parts suitable for attachment to the locomotives for which they were intended. Drilling holes

in a door-jamb in order to attach a door would not constitute the building or manufacturing of a house. Drilling holes in a desk in order to attach a typewriting machine would not constitute manufacture. Drilling holes in cylinders or cylinder-heads so that they may be attached to locomotives does not constitute manufacture. This witness also testified that he made "pins for fastening the wheels; that is, keys, rather, for staying the wheels onto the ax." When asked how frequently he, did this, he said: "Well, whenever there was an old key that couldn't be replaced; and there was not very many of them." He did not make these keys "for. general use," but "to take the place of a particular key." While the making of these keys is manufacturing, it is evident that in quantity this work was only an infinitesimal portion of the entire work done in the Sayre shops.

### Finding of fact on question No. 1.

Under the evidence in this case, the plaintiff's shops at Sayre, Pa., are not engaged in manufacturing (except to a negligible extent), but are engaged in repair work for the plaintiff company, and said shops are indispensably necessary to the plaintiff's discharge of its duties as a common carrier.

### Second question involved.

Having found that the plaintiff's shops at Sayre are not engaged in manufacturing, the second question before us is: Will equity restrain local assessment and taxation in a case such as 'the one at bar?

It has been urged upon us with great zeal and learning that the plaintiff had a full, ample and adequate remedy at law. The defendants have argued that the very purpose of the Act of April 19, 1889, P. L. 37, was to give the right of appeal whenever conditions which the law recognizes as sufficient to change the taxable's liability for taxes arose in other years than triennial years. The defendants have cited that provision of the act reading as follows:

"Any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the county commissioners or board of revision and appeal to the Court of Common Pleas of the county within which such property is situated," etc.

Defendants contend that by the language of this act an appeal may be taken from any assessment. Defendants also declare that whatever uncertainty as to this right might have existed was removed after the legislature passed the Act of May 8, 1909, P. L. 491, the 3rd section of which reads as follows: "At the time and place fixed for the appeal, which in each of the two years after the triennial assessment shall be held in the commissioners' office of the proper county, the commissioners shall attend and hear all persons who may apply for redress, and grant such relief as to them shall appear just and reasonable: Provided, that the commissioners shall not make any allowance or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, excepting where buildings or other improvements have been destroyed, or where coal, ore or other minerals assessed under the triennial assessment have been mined out subsequently to such triennial assessment, in which case such allowance or abatement shall be made."

Defendants' counsel have argued with much force that while the amount cannot be changed other than in triennial years (1921 was the last triennial year prior to this case) except for the reasons provided by statutes, yet if conditions arise entirely taking away the taxable property from taxation, such as is claimed in the case at bar, full redress may be had by such appeal,

because the act provides that "all persons may apply for redress," and that "the commissioners shall grant such relief as to them shall appear just and reasonable." But this is qualified by the proviso that the commissioners shall not make any allowance except under certain conditions, which were non-existent in the case at bar, and, hence, said Act of 1909 could not have availed plaintiff.

Furthermore, we believe that the case of Pittsburgh, Allegheny & McKees Rocks Ry. Co. *v.* Stowe Township, 252 Pa. 149, which has not been overruled or departed from, is so close in its facts to the case at bar that we cannot do otherwise than hold that equity does have jurisdiction to restrain the collection of taxes, where taxes are imposed upon property or "land owned by it (a railroad company) and necessary, essential and indispensable to it in the exercise and performance of its franchise and public duties as a common carrier, and represented by its capital stock, upon which State taxes were and are paid." In that case there was a bill in equity for an injunction against the school district, the Township of Stowe and the County of Allegheny, asking the court to restrain these defendants from collecting taxes on thirty-five acres of land, which thirty-five acres the court below found were used "for railroad purposes." The said thirty-five acres were used for tracks, yards, round-houses, machine-shops, etc., and the company contended that "the same was necessary, essential and indispensable to it in the exercise and performance of its franchises, and is a part of its capital stock on which it pays taxes to the State. It derives no revenue from the land other than from the purposes for which the company was organized." The Supreme Court said, in an opinion by Mestrezat, J. (page 154):

"It is clear that if the evidence warranted the court's findings of fact, the 35.1 acres of land were exempt from taxation for local purposes. . . . We have no doubt . . . that a bill in equity will lie in this case to restrain the assessment and collection of taxes for local purposes if the taxing authorities had no power to levy and collect the taxes. If, as contended by the plaintiff company, the land in question is necessary, essential and indispensable to the exercise of its franchises as a common carrier, and is thereby not subject to taxation for local purposes, the bills in these cases may be maintained. Where there is a want of power to tax or the tax is levied without authority of law, a bill in equity will lie to restrain its collection: St. Clair School Board's Appeal, 74 Pa. 252; St. Mary's Gas Co. *v.* Elk County, 168 Pa. 401; Byers *v.* Hempfield Township, 226 Pa. 278. If the tax is lawful, but the manner of collecting it is oppressive or unfair, or there are technical irregularities in the assessment, the remedy is at law and by an appeal from the assessment. Here, if the court's findings of fact are correct, the property in question is not subject to local taxation, and the taxing officers had no power to levy the taxes on the land in question. The cases at bar would, therefore, fall within the uniform rulings of this court that equity has jurisdiction to grant relief and to enjoin the collection of the taxes. The defendants contend, however, that there is a distinction between the case where the owner has no property subject to taxation and where, as here, the owner admits that part of his property is taxable. We fail to see that there is any distinction in principle which would confer jurisdiction on a court of equity in the one case and not in the other. If any specific portion of the property is not taxable, the taxing officers are without warrant of law to impose and collect the tax on the non-taxable part, and their official acts are as void as to that part of the property as they would be if the taxes had been illegally levied against his entire holdings. The reason of the rule conferring jurisdiction on equity to adjudicate

the question makes it alike applicable to both cases. The question has been raised in this and other states and the jurisdiction has been sustained: Western N. Y. & Pa. Ry. Co. v. Venango County, 5 Pa. Superior Ct. 304; Bell Telephone Co. of Penna. v. Harrisburg, 53 Pa. Superior Ct. 458; Siegfried v. Raymond, 190 Ill. 424. . . .

"The other and controlling question in the case is whether the particular piece of ground for which exemption is claimed is essential and indispensably necessary to the operation of the railroad as such, and is being used by it in good faith for railroad purposes. The learned court below . . . has so found as a fact from the pleadings and evidence in the case, and the question must be answered in the affirmative if the court's findings are sustained by the evidence. We have examined the case with care and are satisfied that the court's conclusions are fully justified by the evidence. It is contended on behalf of the defendants that the burden was on the plaintiff company to show that each and every part of the entire property was used for railroad purposes, and, therefore, exempt from taxation, and that the burden was not discharged because its witnesses gave only general conclusions to the effect that the whole thirty-five acres were essential to the business of the railroad, without stating the facts in detail on which the conclusions were based. . . . This contention is not justified by the evidence. The plaintiff's testimony was admitted without objection, and there was no attempt to exclude it because it was simply the conclusion of the witnesses and not a statement of facts. The witnesses were cross-examined at length and every opportunity was given to test their knowledge of the matters as to which they testified. . .

"If the land in question is being used by the plaintiff in the business authorized by its charter, it is a public use. . . . The decree is affirmed."

The distinction which the defendants' counsel attempt to draw between the above case and the case at bar is that in the case at bar the property in controversy has been liable, at least to 3/23 of its value, for local taxation for several years past, and that in the case above cited the property had never been taxable property. We think this distinction is more shadowy than substantial. As a matter of strict fact, the land in question in the Pittsburgh Railway case undoubtedly had been taxable property until the railway company built and operated its yards and shops thereon. It was the use to which the property was put that deprived the land of its character as locally taxable property. Unquestionably, before the yards and shops were erected and operated, the land had been assessable for local purposes. It is, therefore, not correct to say, as defendants do in their brief, that "in that case (the Pittsburgh Railway v. Stowe case) the taxes, the collection of which the court held equity could restrain by injunction, were taxes levied against property which had never been taxable property." It is true that in the Pittsburgh Railway case some alterations had been made in the topography of the land and certain buildings erected thereon at the time the land became locally non-assessable, but it was not these alterations and buildings that made the property locally non-assessable, but the nature of the business carried on in those buildings and on that land immediately after these physical alterations were made. In the case at bar it is true that, prior to 1923, 3/23 in value of this property was subject to local taxation, by agreement entered into in 1916 between counsel representing the same respective properties, and, therefore, presumably 3/23 of this property was used for manufacturing purposes prior to 1922; yet plaintiff contends that substantially all manufacturing on the property ceased on or before 1922; the evidence supports this contention; and, therefore, ipso facto, the character of the property changed and it was

then no longer locally assessable. It had been 3/23 locally assessable, as in the Pittsburgh case the land had been wholly locally assessable, until its user changed.

Let us assume that in 1922 a property along the line of the plaintiff company at Sayre, Pa., which had been used as a dwelling-house or for manufacturing, was suddenly converted into a railroad station and the local authorities had continued to assess this building as theretofore. Could it be successfully contended that a bill in equity would not lie to restrain the collection of taxes on this property because the property had theretofore been assessable for local purposes and its externals had not changed and the only change was in the use to which the property was put? We think not. We think a bill in equity would lie in this supposed case to restrain the collection of taxes on the railroad station, because it is the use to which the property is put that gives it its character for purposes of taxation. In the Pittsburgh Railway case it was not the change in the externals of the land, but the change in the enjoyment of the land, that withdrew the land from the sphere of local taxation. Likewise, in the case before us, it was the change in 1922 in the enjoyment of the 3/23 of this property, formerly assessable for local purposes, that removed this fraction of the property from the sphere of local taxation, just as in 1916 the user of 20/23 of this property withdrew it from the sphere of local taxation.

Western New York, etc., R. R. Co. v. Venango County, 183 Pa. 618. The facts of this case are reported in 5 Pa. Superior Ct. 304. The appellant had erected near its main tracks in Oil City, Pa., a number of structures connected with the operation of its railroad. In 1895 the Commissioners of Venango County divided the plaintiff's property for purposes of taxation and caused an assessment to be made thereon as provided by law and levied taxes against certain designated pieces of land. Appellant filed a bill in equity to restrain the defendants from collecting county and poor taxes upon the property designated. The Court of Common Pleas of Venango County dismissed the bill in equity, which prayed for the restraining of the local authorities from collecting taxes upon the designated areas, on which machine-shops were erected and which the plaintiff alleged were used exclusively in improving and restoring the cars and locomotives of the company and not for original construction. In this case the Superior Court reversed the Court of Common Pleas of Venango County, and the Supreme Court sustained the decision of the Superior Court. This case, therefore, clearly recognizes the power of a court of equity to restrain local authorities from collecting taxes on machine-shops of a railroad company, used exclusively in repairing and restoring cars and locomotives of the company.

In Luzerne County Gas and Electric Co. v. Morgan, 70 Pa. Superior Ct. 60, the jurisdiction of equity to restrain a tax collector from collecting the whole of an assessment on a building owned and occupied by a gas and electric company chiefly for corporate purposes was expressly recognized.

In the case of York Haven Water and Power Co. v. Londonderry Township School District, 77 Pa. Superior Ct. 308, while the bill in equity to restrain the collection of taxes by the local authorities was dismissed on the ground that there was no testimony to support the assertion that the land belonging to a public service company, which was a farm, was an essential element in the prosecution of the company's business, the case impliedly recognizes the right of a court of equity to restrain the collection by local authorities of taxes on property which does constitute an essential element of the prosecution of a public corporation's business.

In the light of the foregoing authorities, we cannot but uphold the right of a court of equity to restrain the collection of taxes on property which we have found is indispensably necessary to the due exercise of the franchises of a public corporation. The decisions of our highest courts must stand as precedents for the lower courts. The doctrine of *stare decisis* means exactly this.

7 Ruling Case Law, "Courts," § 29, page 1000: "The phrase *stare decisis, et non quieta movere*—to stand by precedents, and not to disturb settled points—expresses the policy of the courts, and the principle upon which rests the authority of judicial decisions as precedents in subsequent litigations. . . .

"Where a point has been once settled by decision, it forms a precedent which is not afterwards to be departed from.

"The rule *stare decisis* has for its object the salutary effect of uniformity, certainty and stability in the law. . . . It finds its support in the sound principle that when courts have announced, for the guidance and government of individuals and the public, certain controlling principles of law, or have given a construction to statutes upon which individuals and the public have relied in making contracts, they ought not, after these principles have been promulgated and after these constructions have been published, to withdraw or overrule them, thereby disturbing contract rights that had been entered into and property rights that had been acquired, upon the faith and credit that the principle announced or the construction adopted in the opinion was the law of the land. While, perhaps, it is more important as to far-reaching juridical principles that the court should be right, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, than merely in harmony with previous decisions, it, nevertheless, is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. Parties should not be encouraged to seek re-examination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it. . . .

"Sec. 30. . . . The rule *stare decisis* seems to apply with peculiar force and strictness to decisions which have determined questions respecting real property and vested rights, though it embraces as well those matters of general commercial importance which tend to influence future business transactions, and it has been held that decisions long acquiesced in, which constitute rules of property or trade, or upon which important rights are based, should not be disturbed, even though a different conclusion might have been reached if the question presented were an open one, unless the evils of the principle laid down will be more injurious to the community than can possibly result from a change. . . .

"Sec. 31. . . . In order that a prior decision of a court shall govern a later decision under the doctrine of *stare decisis*, such prior decision must be in point, and as a test in determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, it has been said that the value of the first is measured by its similarity or dissimilarity to the second in its controlling facts."

We are convinced that the case of Pittsburgh, etc., Ry. Co. *v.* Stowe Township, above cited, is so similar in its controlling facts to the facts as we have found them in the case at bar that the doctrine of "*stare decisis*" compels us to overrule the contention of the defendants that equity has no jurisdiction to restrain the imposition of taxes by the local authorities in the case at bar.

Lehigh Valley Railroad Company v. Ruggles et al.

*Cases cited by defendants distinguished.*

We have reached the above conclusion only after examining the cases urged upon us by defendants' counsel. These cases are discussed below:

Pardee et al. v. Schuylkill County, 276 Pa. 246: In this case the Supreme Court said: "When, as here, there is a duty to assess, and the means employed by defendants are legal, the only remedy open to one who alleges his property has been valued too high is to follow the statutory method by appealing from the assessment." It is not necessary for us to point out how widely this case differs from the case at bar. In the case at bar we have found as a fact that there was not a duty to assess, but a duty *not* to assess, and the contention of the plaintiff is not that the property is valued too high, but that the defendants had no right to value or assess the property at any figure for purposes of local taxation.

Whitney et al. v. Jersey Shore Borough, 266 Pa. 537: A bill in equity was filed against a borough incorporated under a special act to declare void and of no effect certain annexation proceedings and for relief from alleged illegal taxation in the annexed territory. The Supreme Court held that the court below was right in deciding that, under the Borough Act of 1915, the plaintiff had a full and adequate remedy at law, and that equity, therefore, had no jurisdiction. The Supreme Court said in that case (page 545): "One cannot read the bill without being impressed that the final prayer—for relief from alleged illegal taxation—merely represents an ostensible purpose, while the real purpose sought to be accomplished is shown by the numerous prior prayers relating to the annexation of territory."

The Supreme Court also said (page 546): "It is truly stated in the printed argument of appellee, 'Counsel for appellant has labored to raise a question of the assessment, levy and collection of taxes, and to have the court determine the regularity of the annexation as incidental to this tax question. Obviously he has . . . put the cart before the horse; . . . the real question here, in spite of what has been said by appellants, is not a question of taxation, but of the regularity of the annexation proceedings, which is not reviewable by a court of equity, but only by the Court of Quarter Sessions, as provided in the relevant act of assembly.' "

The above quotations sufficiently distinguish that case from the case at bar.

Pennsylvania Stave Co.'s Appeal, 225 Pa. 178: This case decided merely a question of practice, the Supreme Court holding, according to the second syllabus, that "where an appeal is taken to the Common Pleas from a tax assessment by the county commissioners acting as a board of revision, and before the appeal is heard the parties agree to an adjustment, and the court enters a judgment pursuant to the agreement, such judgment is adverse, and cannot be set aside after the expiration of the term at which it was entered, in the absence of any ground for equitable relief." The language of the Supreme Court was (page 182): "The final order, when set aside, had ceased to be within the breast of the court, the term in which it was made having expired. Nor was there anything in the case calling for equitable interference by the court." The court below was reversed.

In the second case of Pennsylvania Stave Co.'s Appeal, 236 Pa. 97, no question similar to the one at bar was before the court. The case held that a manufacturing plant was taxable as real estate, although the structure stood upon land leased for a term of years, with a right in the lessee to remove the buildings and machinery at the end of the term. It also decided certain questions as to how the valuation of the real estate should be determined. It constitutes no precedent for us in the case at bar.

The case of Moore *v.* Taylor, 147 Pa. 481, is urged upon us with much vigor. This case held that when a church building ceases to be used as an actual place of religious worship, its exemption from taxation *ipso facto* ceases, and the property forthwith becomes subject to taxation as fully as though it had never been exempted, and that the only remedy of taxables who feel themselves aggrieved by the action of the board of revision of taxes is by appeal. The language of the Supreme Court is as follows (page 483): "The duty of taxing officers is quasi-judicial; and it is well settled that, when the general power to assess exists, the remedy for illegal taxation is by appeal; if none be given, neither the Common Pleas nor this court can reverse the judgment of the taxing officers." In that case clearly there was a general power to assess, because the building had ceased to be used as a place of religious worship. In the case at bar the reverse is true, that there was no general power to assess because the property in question had ceased to be used for purposes which made it subject to local taxation. Of course, when the general power to assess exists, as it did in the case of Moore *v.* Taylor, where the former church building was then used for private purposes, the taxable who felt aggrieved by the assessment of the taxing authorities would have to find his sole remedy in an appeal. But there is nothing in this case that in the slightest degree abridges the other well-recognized doctrine that when the general power to assess does not exist, equity can restrain the collection of taxes illegally assessed. We have found as a fact in the case at bar that *there was no general power to assess* because the subject of the assessment was not used for manufacturing purposes, but was used for purposes that were indispensable to the proper administration of the Lehigh Valley Railroad and the repair of its equipment.

Davison *v.* Erie, 274 Pa. 523: In that case the Supreme Court said (page 525): "The correctness of the assessment of a part of this property is the question raised by the present appeal from a final decree restraining the collection of any tax based thereon." The Supreme Court held, as stated in paragraph 3 of the syllabus: "A taxpayer in the City of Erie has no standing in a court of equity to restrain the collection of city taxes, where it appears that the taxing authorities have the power to make the assessment and levy the tax by general laws, under which irregularities may be corrected on appeal to the courts."

This distinguishes that case from the one before us, for here we find as a fact that, because of the status of the property in question as repair-shops indispensably necessary to the operation of the Lehigh Valley Railroad, the defendant taxing authorities had no power to make the assessment complained of.

The defendants also lay much stress on Pardee *v.* Schuylkill County, 276 Pa. 246. In that case the bill averred that the local assessors disregarded their duty, in that, instead of assessing the properties in question at the rate or price at which they could be sold after full public notice, in fact assessed them in some cases at only 15, 30 and 50 per cent. thereof, and that the county commissioners appointed legally improper persons to make the valuations, etc. There was absolutely no allegation that the property in question was not subject to taxation. The Supreme Court said (page 253): "When, as here, there is a duty to assess, and the means employed by defendants are legal, the only remedy open to one who alleges his property has been valued too high is to follow the statutory method by appealing from the assessment."

In the case at bar we have found as a fact that there was a duty not to

assess because of the status of the property as property indispensably necessary to the operation of the Lehigh Valley Railroad.

Defendants' counsel contend that certain expressions in some of the above cases cited by them modify the cases cited herein in support of our decision. We do not so interpret these decisions, particularly when they are read in connection with the facts of the cases decided. The controlling facts of the cases which guide us to our decision here are almost precisely similar to the facts here as we have found them. The controlling facts of the cases cited by the defendants are not similar to the facts here.

"The doctrine of *stare decisis* contemplates only such points as are actually involved and determined in a case, and not what is said by the court or judge outside of the record or on points not necessarily involved therein:" 7 Ruling Case Law, "Courts," § 31, page 1003.

### Conclusion of law.

Our conclusion of law is that, as a court of equity, we have a right to restrain the local assessment and taxation complained of, and that we should do so. Let decree *nisi* be entered, etc.