# Pittsburgh & Lake Erie Railroad, Appellant, *v.* Allegheny County.

*Taxation—Local taxation—Railroads—Warehouse—Act of April 29, 1844, P. L. 486.*

1. The test of exemption claimed for local taxation by a public service corporation, is not what the corporation has done, or what it may attempt to do, but what it is authorized to do, and may be compelled to do, under the charter, in the performance of the duties imposed thereby.

2. Where a railroad company constructed a building over its tracks at a freight terminal, and uses it in large part as a place for the storage of goods by inbound shippers only, over the company's lines, on which storage is charged, and warehouse receipts issued, the building is a storage warehouse, and, to the extent to which it is used as such, is subject to local taxation.

3. The fact that such building stimulated the company's business, enhanced its patronage, and gave it command of a greater number of cars for outgoing freight, does not change its character so as to exempt it from local taxation.

4. Nor is it material that the company filed, as a part of its tariffs with the Interstate Commerce Commission and the Public Service Commission of Pennsylvania, its rates for storage in such building.

5. The local tax may be imposed on the fractional part of the building.

6. The court will not take into consideration such a remote possibility as a tax sale of a fractional part of the building causing a disruption and paralysis of the railroad.

Argued March 20, 1925. Appeal, No. 68, March T., 1925, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1923, No. 2354, refusing injunction, in case of Pittsburgh & Lake Erie Railroad Co. v. Allegheny County and Samuel D. Foster, County Treasurer. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Affirmed.

Bill for injunction to restrain assessment and levy of tax for county purposes. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts. Injunction refused.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Maynard Teall,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.—Counties of this Commonwealth are not authorized to tax property used for railroad purposes: Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422; Erie County v. Transportation Co., 87 Pa. 434.

The following properties, among others, have been held not subject to local taxation:

Bed, berm-bank, tow path, toll house, and collector's office of a canal: Lehigh Coal & Navigation Co. v. Northampton Co., 8 W. & S. 334, 339.

A building used as a toll house and collector's office by a canal company and also as a residence—and a rather elaborate residence—for the collector: Schuylkill Navigation Co. v. Berks Co., 11 Pa. 202, 205.

Freight and passenger stations of a railroad company: Northampton Co. v. Lehigh Coal & Navigation Co., 75 Pa. 461.

The roadbed of a railroad company: Phila. v. R. R., 38 Pa. Superior Ct. 529.

Machine shops used for repairing cars and locomotives owned by a railroad company: Western, etc., R. R. v. Venango Co., 183 Pa. 618.

Side tracks extending from an industrial plant to a line of railroad and used only by the owners of the plant: Pittsburgh, Allegheny & McKees Rocks R. R. v. Twp., 252 Pa. 149.

Cattle yards: Appeal of Penna. R. R. Co., 3 Pa. C. C. R. 162.

A restaurant in a passenger station, maintained for the convenience of passengers: Lehigh Valley R. R. v. Hart, 22 Pa. Dist. R. 884.

Elevators on grain-carrying railroads: State, etc., R. R. v. Jersey City, 49 N. J. L. 540; Chicago, etc., R. R.

v. Douglas Co., 122 Wis. 273; State v. B. & O. R. R., 48 Md. 49; Detroit Union R. R. Depot & Station Co. v. Detroit, 88 Mich. 347, 50 N. W. 302.

*Wm. C. Jacob,* with him *W. Heber Dithrich,* for appellee, cited: Conoy Twp. v. Electric Power Plant, 222 Pa. 319; Western N. Y. & P. R. R. v. Venango, 183 Pa. 618; Wayne County Com. v. Canal Co., 15 Pa. 351; Railroad v. Berks County, 6 Pa. 70; Phila. v. Barber, 160 Pa. 123.

OPINION BY MR. JUSTICE SCHAFFER, April 13, 1925:

By this bill in equity the plaintiff railroad company sought to enjoin the collection of county taxes from a property owned and used by it in the City of Pittsburgh. The learned chancellor who heard the case decided that five-sixths of the value of the building is taxable and one-sixth thereof and the land upon which it stands are exempt. From this determination the railroad company prosecutes its appeal.

The building was erected on land belonging to the railroad company already in use by it for tracks and platforms. The structure is seven stories high and is contiguous to a freight station of the company. The first floor is merely an extension of the floor of the freight station. The tracks which were on the land prior to the construction of the building are substantially as they were before, the building being erected above them; they pass under it to the freight station. The first story is used for ordinary freight station purposes and the upper ones are devoted by the railroad company to storing incoming freight. On arrival at Pittsburgh, cars are unloaded at the building and their contents placed in the space reserved for storage. The articles stored remain in the building for varying lengths of time to meet the convenience of the shipper, no limit as to the length of time during which they may remain being prescribed. Deliveries can be made from the building to

persons other than shippers or consignees who exhibit a proper order. The storage facilities are not extended to the public as a whole, but only to shippers and consignees of freight coming into Pittsburgh over plaintiff's lines. The building was erected for the purpose of affording additional freight station space to the railroad company, because other railroad companies entering the city were furnishing to shippers the kind of storage serv‹ ice now furnished by plaintiff, and, as a result of which, a considerable amount of transportation business that otherwise would have gone to plaintiff, went to its competitors, and, because plaintiff had an inadequate supply of empty box cars for the shipment of goods from Pittsburgh to points off its own lines, it was thought by those charged with the management of the railroad that the furnishing of storage facilities would increase the volume of box-car traffic from off-line points, which would make available to plaintiff a larger number of empty box cars for outbound off-line freight. It is alleged by plaintiff that the latter was the primary purpose to be served in erecting the building and in making storage facilities available to patrons of the road. It is apparent that the expectation in this respect was justified by the event, as plaintiff since the completion of the building has had available for outbound traffic many hundreds of box cars more per year than before it was built. The value of the building has always been included in the plaintiff's return to the Commonwealth of Pennsylvania for capital stock tax purposes.

Appellant argues that no part of the building can be taxed for county purposes under section 32 of the Act of April 29, 1844, P. L. 486, relying upon the long line of cases beginning with Schuylkill Bridge Co. v. Frailey, 13 S. & R. 422, and ending with Pittsburgh, Allegheny & McKees Rocks Railroad Co. v. Stowe Township, 252 Pa. 149, the contention being that the entire structure is a part of the railroad, used in connection with and as incident to the business of railroad transportation as it is

carried on under modern conditions, that the building is in reality not a warehouse but a terminal facility of the corporation and hence exempt from taxation under the cases cited.

In this, as in other matters, it is important that we look at things as they are and not be misled by the names given to them. While appellant denominates the building, and the use to which that part of it is put which was held by the court below to be liable to taxation, a terminal facility, in reality it is a warehouse, used, it is true, only by inbound shippers over plaintiff's line for that purpose, but by whomsoever used, the use is for the storage of goods, for which use charges are made and for the goods, not bills of lading but warehouse receipts are issued, therefore, it must be held to be what it is, a storage warehouse; and a storage warehouse of this character is not such a part of the railroad as to be exempt from local taxation.

There may be many terminal facilities of advantage to shippers which a railroad company might deem it wise to furnish, as for instance, a hotel in conjunction with a passenger station, but if the railroad did build such a facility as that, and in it carried on the business of an innkeeper, we think no one would argue that the business was so related to that of the railroad as that the hotel building would be exempt from local taxation, or if, under modern conditions, it should be deemed wise by the railroad company, as well it might be, to afford facilities for the parking of automobiles belonging to its patrons on land which it owned, could it be contended that such land could thereby be exempted from its burden of local taxation?

The fact that the railroad company files as part of its tariffs with the Interstate Commerce Commission and Public Service Commission of Pennsylvania its rates for storage in the building cannot make any difference so far as the taxability of the building is concerned. As is known to everyone who has cognizance of the filing of

such tariffs, they are returned to the public bodies receiving them for purposes entirely disconnected with the subject of taxation. Because for a given service carried on by a railroad in connection with transportation, it is required to file a tariff of charges for such service, it could not be maintained that from this fact alone exemption from taxation results.

The storage warehouse maintained by the company undoubtedly stimulated its business, enhanced its patronage and gave it command over a certain kind of cars which it could not otherwise avail itself of in the quantity made possible by the presence of the storage warehouse on its line, but the same thing may be said of other facilities which could be provided by the company on its land, as, for instance, a department store, alongside its tracks, would stimulate business for the railroad, bring cars for its use and provide facilities for its patrons, but such an enterprise would not in any sense be such a part of the railroad as to be exempted from taxation, no more than would a storage warehouse, however limited its use. "The test in such case [of exemptions claimed for local taxation] is not what the corporation has done, or what it may attempt to do, but what it is authorized to do, and may be compelled to do, under its charter in the performance of the duties imposed thereby": Conoy Township v. York Haven Electric Power Plant Co., 222 Pa. 319, 323. "It [a railroad company] is given great privileges and franchises to enable it to build and operate a line of railroad for the public convenience and its own private profit. It must devote itself to the business for which the state has created it and clothed it with its powers and privileges......If it steps over its boundary, local taxation is among the penalties which it incurs and which it ought to be ready to submit to without protest": Western New York & Penna. R. R. Co. v. County of Venango, 183 Pa. 618, 622. In the last-cited case, it was held that the machine shops of a railroad company used exclusively in repairing and

restoring the cars and locomotives of the company, and not for original construction, are exempt from taxation for local purposes, but if used for construction, they are subject thereto. In Commissioners of Wayne Co. v. Delaware & Hudson Canal Co., 15 Pa. 351, it was decided that buildings at the junction of a canal and railroad, used for receiving and trans-shipping goods and merchandise to and from the canal and railroad were liable to taxation for county purposes, and in Railroad v. Berks Co., 6 Pa. 70, it was stated that warehouses owned by a railroad company, "necessary and indispensable facilities to increase the business on the road," were liable to taxation.

We believe it would not be contended by the able counsel for appellant that, if the building in question were usable by the public generally for storage purposes, it would not be liable to local taxation; this being so, it is apparent that the exemption which is claimed would arise not from the use to which the property is put but on account of the use to which it is limited. In our opinion, this latter cannot be determined to be a proper basis for exemption from local taxation.

Some point seems to be made by appellant of the proposition that a fractional part of the building cannot be taxed because, if the tax is not paid, it cannot be collected without proceedings on the lien and to a sale which would disrupt from the railroad that portion of the property used for tracks and freight station purposes, unquestionably exempt from taxation,—that to sell the building in a tax-collection proceeding based on five-sixths of its value might paralyze the railroad. In this respect, we think appellant has conjured up a spectre much thinner than air. Means would unquestionably be found to collect the tax, if in a most unlikely event it should not be paid, which we are sure would not result in the dismemberment of the railroad. We have approved of the division of buildings belonging to charitable organizations and churches for taxation purposes, exempting

from taxation the space occupied for charitable and church purposes and taxing that portion from which revenue was derived: ,Board of Home Missions, etc., v. Phila., 266 Pa. 405; Phila. v. Barber, 160 Pa. 123. No reason is apparent to us why the same thing may not be done with the structure in question.

Our judgment is that the case was properly determined in the court below and its decree is affirmed at the cost of appellant.