## Boyle v. Westmoreland County et al.

*David L. Waldron*, for plaintiff; *Marker & Rial*, for Westmoreland County. *S. W. Bierer*, for County Treasurer.

*H. H. Fisher* and *Charles H. Harman*, for Youngwood Borough.

COPELAND, P. J., April 13, 1928.—The bill in the above-stated case was filed Dec. 10, 1926; injunction affidavits were filed on the same day; service of bills duly was made and appearances were entered for the defendants. A preliminary hearing on the allegations of the bill was held on Dec. 15, 1926. At the conclusion of the hearing, the defendants moved the court to dismiss the bill of complaint. This motion was refused. The testimony taken was transcribed and filed Dec. 22, 1926. At the final hearing on June 22, 1927, the plaintiff offered additional testimony. An answer of the defendants was filed Jan. 10, 1927.

The bill sets forth that the plaintiff is the owner of a certain lot of ground in the Borough of Youngwood, numbered 527, fronting on the westerly side of Seventh Street and running back along lot No. 526 on the south; along an alley at the rear and along Depot Street on the north. On it is erected a nine-room brick dwelling-house and garage.

The bill further sets forth that this property was purchased from L. L. Lowe and others on Dec. 9, 1925, by deeds recorded in Deed Book 824, pages 212 and 215, and that it is used as a convent for the housing of teachers of the parochial school. The bill further sets forth that this property was assessed in the year 1925 for the purposes of taxation at a value of $6500; that this assessment was protested and exemption therefor was claimed; that the exemption was not allowed; that a levy of taxes against the said property for the year 1926 duly was made as to county, borough and school taxes, the total amount being $318.50.

The bill further sets forth that the convent property produces no revenue and is a necessary part of the parochial school; that the said school and convent are maintained by voluntary contributions; that all children of school age may attend the said school without charge, and that the said convent property is a purely public charity. The bill prays for a preliminary injunction, to be made perpetual upon final hearing, enjoining the defendants from taking any action whatever toward enforcing the collection of taxes and from assessing òr levying taxes against the property.

The answer filed by the defendants contends that the convent property is not used solely as a home for the teachers in the said school during the school

term only, but that at times the building is used for private religious services. In addition, it is contended that a garage is erected on the lot of ground for the storage of motor-vehicles; that this garage is not used for the convenience of the teachers of the school exclusively, but that at times it is used to store the motor-vehicle of the pastor of the church and the motor-vehicles of a person or persons not connected with either church or school, and that the garage is not necessary for the holding of church services or in connection with the said dwelling-house as a residence for the teachers of the school.

The answer further sets forth that, even though the complainant protested the assessment of the said convent property, it failed to take an appeal from the decision of the board of county commissioners to the. Court of Common Pleas as required by law.

The defendants contend that the complainant had a full, complete and adequate remedy at law by appeal as aforesaid; that this remedy is exclusive, and that the court is now without jurisdiction to afford the relief sought in this proceeding.

The defendants further deny that the convent property does not produce a revenue, and, under the allegations of the bill, pray the court for judgment as to whether the complainant is entitled to exemption of the said convent property and whether the same is an institution of purely public charity within the purview of article IX, section 1, of the Constitution of the State. The defendants further deny that the said convent property is a necessary part of the parochial school, and aver that the said garage is not a necessary part of the said school nor is used by the teachers thereof in connection with their duties as school teachers.

The defendants further deny that the real estate described in the 10th paragraph of the bill is a necessary part of the required property of the Holy Cross Roman Catholic Congregation of Youngwood. The defendants further deny that the said property is occupied and utilized by the Sisters of Charity for the educational activities of said congregation. They further deny that the said convent property is exempt from public taxation unless used as an actual place of religious worship.

The defendants further deny that the said convent property was purchased and is maintained by voluntary contribution. They assert it was purchased for $16,000 and that a purchase-money mortgage, as part payment therefor, was given. They further aver that a note for $5000 was given by the officers of the church as part-payment for the said property, and that the balance of $5000 was donated by members of the church, and that, therefore, the convent is not under the law a purely public charity.

The defendants further deny that the said convent property is a necessary and required part of the said school, in that the church building and school building are erected upon a single tract of land, while the convent property is separated therefrom by an alley, does not immediately adjoin the lot upon which the church and school are erected and is not contiguous thereto.

The defendants further deny that the said convent property was purchased for and used solely as a home for the said teachers, but aver that it was purchased for the purpose of a convent where any member of the Sisters of Charity is privileged to live, whether she be a teacher in said school or not.

The defendants further aver that the said church is a purely religious institution, and that the furnishing of educational facilities is not a required or essential part of the organization of said church; that it is under no obliga-

tion to furnish educational facilities for its members, and that attendance at the school is not, under the law, compulsory.

### Testimony.

A neat, fair and concise summary of the evidence offered in this case is as follows:

That the property in question is lot No. 527, on South Seventh Street, in the Borough of Youngwood, Westmoreland County, Pennsylvania; that prior to 1925, and until Dec. 9th of that year, it was owned by the Sarah Lowe Estate; that on Dec. 9, 1925, the heirs of Sarah Lowe sold the property in question to the Right Reverend Hugh C. Boyle, Roman Catholic Bishop of the Diocese of Pittsburgh, trustee for the Holy Cross Roman Catholic Congregation of Youngwood, Westmoreland County, Pennsylvania, the plaintiff in this case; that, in January and February, 1925, the triennial assessment of the real estate of Westmoreland County was made by the county commissioners, sitting as a board of revision of taxes and appeals, and at that time the property was assessed in the name of the Sarah Lowe Estate, at $6500; that, pursuant to this assessment, the taxes were paid for 1925 by the Sarah Lowe Estate; that after the sale of this property by the heirs of Sarah Lowe Estate to the plaintiff in this case on Dec. 9, 1925, the county commissioners or the tax clerk in the county commissioners' office, changed on the tax books of the county the assessment of this property from the Sarah Lowe Estate to "Boyle, Rev. Hugh C., in trust for the Roman Catholic Congregation of the Holy Cross Church," meaning the plaintiff in this case; that this change was made without notice to the plaintiff; that when it subsequently was learned, after the taxes were due and payable by the plaintiff in this case, that the property in question was subject to taxation for all purposes as heretofore assessed, Rev. Gilbert Straub, O. S. B., Pastor of the Holy Cross Congregation of Youngwood and principal of the parochial school, asked the county commissioners to take this property off of the taxable list and place it on the exemption list of the properties of the county, that the county commissioners refused to place the property on the exemption list, being, as the tax clerk stated, "a little dubious about it;" that the plaintiff, unable to obtain relief from the county commissioners, caused this bill to be filed to restrain the tax collector from collecting taxes for any purpose; that the taxes for the year 1926 have not been paid; that the lot in question is known and designated as lot No. 527 in the Youngwood Land Company plan of lots; that this property was acquired for the purpose of a convent to house the sisters or nuns who teach school in the parochial school of Youngwood; that a debt had been created to purchase the property; that the purchase price comprised a donation of $5000, paid in cash, a mortgage of $6000, taken by the heirs of Sarah Lowe, the grantors, and a note of $5000, given by the bishop of the diocese; that no profits are derived from this property; that the contributions go to the church fund, and from this fund the convent building is supported; that in the parochial school, in which the nuns housed in the building teach, practically all of the books used are donated to the pupils, comparatively few pupils voluntarily paying for them; that there were in the school at the time of taking the testimony 130 pupils; that this enrollment consisted of children of the parish and, in addition thereto, children of the Orthodox Greek Catholic Church, who are protestants in the eyes of the Roman faith, children who are unable to get along at the public schools and pagan children not baptized; that, while the parochial school is instituted for the purpose of educating the children of the parish, no one is denied admission on account of creed, color, race or condition; that the chil-

dren of the Roman Catholic faith must take regular instruction in religion, and that with the children of other faiths this instruction is optional; that the parochial school conforms to the public schools of Youngwood, in that they open the same day and close the same day; that the convent property is used directly for the operation of a parochial school and is part of it; that the property in question, or what is known in this proceeding as the convent property, is used for no other purpose than a residence for the teaching nuns in the parochial school; that three teaching nuns and one other, who acts as housekeeper, are housed there during the school term; that the teachers receive $35 a month, and that the other nun, the housekeeper, gets no pay; that during their vacations the nuns or teachers in this parochial school housed in this convent return to their mother home, the Sisters of Charity Convent on Seton Hill, just outside the city limits of the City of Greensburg; that the convent property is not used for any purpose during vacation periods; that the garage in question, on the same lot as the convent, is from four to six feet from the convent building and is used for the storage of the automobile used by Father Gilbert Straub, the principal of the parochial school, and for the storing of school furniture, books, supplies, etc., and for the storing of property belonging to the convent property, such as doors and window screens, etc.; that the convent property is a nine-room brick house, and the garage is a tile building large enough to store two cars; that the taxes for the year 1926 are as follows: General taxes, $26; road taxes, $26; borough taxes, $110.50; school taxes, $156, or a total of $318.50.

From the testimony in this case we find the following

### Findings of fact.

1. That the Right Reverend Hugh C. Boyle, Roman Catholic Bishop of the Diocese of Pittsburgh, holds in trust for the Holy Cross Roman Catholic Congregation of Youngwood certain real estate situate in the Borough of Youngwood, Westmoreland County, Pennsylvania, upon which are erected a church, a parochial school building, a convent building and a garage.

2. That the convent building and the garage are separated from the parochial school building and church by an alley.

3. That the assessor of Youngwood Borough assessed the property now in controversy for the purposes of taxation for the year 1926 at the valuation of $6500 and described the said property as fronting 86.75 feet, more or less, on the westerly side of Seventh Street in said borough, with the following dimensions: 86.75 feet by 100 feet by 75.7 feet by 49 feet, more or less, by 52 feet, more or less; that the lots so assessed have erected thereon a two-story brick dwelling-house with a garage in the rear.

4. That at the time said property was purchased by complainant it was intended to be used, and since has been used, by members of a sisterhood of nuns, who are teachers in the said parochial school.

5. That the said convent building is occupied during the school term of the parochial school by members of the said sisterhood of nuns; that the instruction of the pupils in said school is given by the nuns and by Rev. Father Gilbert Straub exclusively, with the exception that lay teachers are called in occasionally to supply a vacancy caused by the illness or absence of one or more of the nuns.

6. That a small salary is paid to the nuns and that no rent is charged for the convent building.

7. That the convent building and the garage, which is erected on the same lot, were purchased and are maintained by voluntary contributions.

8. That a part of the general instruction given in the parochial school consists of religious instruction in the catechism and Bible of the Roman Catholic Church, but that pupils, other than Roman Catholics, are not required to take such instruction.

9. That no pupils of any religious faith other than the Roman Catholic attend the said parochial school at the present time, but that the said school is open, free of charge, to all children of school age, regardless of race, color, creed or condition.

10. That no tuition or admission fee is charged students in this particular school, that the privileges of the school are not confined to any particular class of individuals and that the school, together with the convent property, is maintained by voluntary contributions as a purely public charity.

11. That the said garage, which is erected on the same lot with the convent property, is a necessary part of the parochial school for the reason that it is used as a garage by the principal of said parochial school and for the purpose of storing school furniture and supplies as the most convenient place for such storage.

12. That by reason of the fact that nominal salaries are paid to the teachers in this school, it is altogether proper for the church operating the parochial school to furnish a home for the teachers without charge; that under all the circumstances the building known as the convent property, together with the lot on which it is located, including the garage thereon erected, is a necessary part of the parochial school.

13. That being a necessary part of the parochial school, said convent property, including the garage erected thereon, is entirely exempt from taxation.

### Conclusions of law.

1. The convent building and garage assessed in this case are used directly for the purposes and operation of the parochial school of the Holy Cross Roman Catholic Congregation of Youngwood and are a part of it.

2. The parochial school of Holy Cross Roman Catholic Congregation of Youngwood is a purely public charity within the meaning of the Constitution of Pennsylvania and the Act of July 17, 1919, P. L. 1021, as amended by the Act of April 9, 1921, P. L. 119.

3. The convent building and garage assessed in this case are exempt from taxation under the law as a necessary part thereof.

4. The assessment of the real estate in question was illegal and contrary to the provisions of an act of assembly passed by the legislature in pursuance of an express provision of the Pennsylvania Constitution.

5. Equity may enjoin against the collection of a tax so levied without authority and in violation of law.

6. This court has jurisdiction to restrain the defendants from assessing, levying and collecting taxes from the real estate in question.

7. The preliminary injunction granted in this case should be made permanent.

8. The Act of July 17, 1919, P. L. 1021, and its amendment of April 9, 1921, P. L. 119, passed by the legislature in pursuance to power conferred upon it by article IX, section 1, of the Constitution of Pennsylvania, is constitutional.

9. That the County of Westmoreland should pay the cost of this proceeding.

### Discussion.

The only two questions argued to the court in this case by the defendants were: First, the exemption of this property from taxation as a charitable

institution; and, second, the jurisdiction of a court of equity to grant the relief sought by the plaintiff in this case.

On behalf of the defendants, the question of the constitutionality of the Acts of 1919 and 1921 was also raised.

Taking up the first question as to whether this is such a charitable institution as should be exempted from taxation, we will now turn our attention to the authorities on that subject.

Section 1 of the Act of April 9, 1921, P. L. 119, reads, in part, as follows: "All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by the public or private charity, . . . be, and the same are hereby, exempted from all and every county, city, borough, township, bounty, road, school and poor tax."

The Constitution of Pennsylvania authorized the general assembly to exempt from taxation institutions of purely public charity, and the general assembly by general laws may exempt from taxation public property used for public purposes, actual places of religious worship and institutions of purely public charity. Article IX, section 1, of the Constitution of Pennsylvania reads as follows: "All taxes shall be uniform, upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit and institutions of purely public charity."

Property used for a purely public charity, whether physically separated by an alley or otherwise, and necessary for the purposes and operation of the charity, is equally exempt from taxation with property that is directly connected with a charitable institution.

In the case of Pennsylvania Hospital v. Delaware County et al., 169 Pa. 305, it was said, quoting from the third syllabus: "Where a charitable institution acquires property not directly connected with the original plant and uses such property directly for the purposes and in the operation of the charity, it is a part of the plant and is exempt from taxation, although it may be used in a manner to yield some return and thereby reduce the expenses."

This view expressed in the syllabus fully was supported by the facts and the opinion of the court which followed.

The courts have taken a very broad view of a public charity and have not confined their description of a public charity to what the defendants desire this court to hold.

It was said in Methodist E. Church v. Philadelphia, 266 Pa. 405, quoting from Chief Justice Moschzisker's opinion (page 409): "What is and what is not 'a purely public charity' has been much discussed in our cases, and, on the whole, we have taken a rather broad view of the meaning of that term. . . . We early ruled that a purely public charity, within the meaning of Article IX, Section 1, of the Constitution, is not necessarily one solely controlled by the State, but extends to private charitable institutions which are not administered for any individual gain; . . . we held that the true test of a public charity is the character of the objects sought to be attained, saying, to bring the hearts of an indefinite number of persons 'under the influence of education or religion' was a proper object of public charity; . . . we ruled that the mere fact of a public charity being under the control of those belonging to a particular religious denomination, so long as its ultimate object was to help an indefinite number of persons, without regard to their

religious beliefs, made it none the less a purely public charity. When these authorities, and others which might be mentioned, are applied to the present case, the right of plaintiff to tax exemption is plain."

Again, it was said in Friends' Boarding Home *v.* Bucks County Comm'rs, 80 Pa. Superior Ct. 475: "In that case the privileges of the plaintiff institution were given by the instrument creating it to certain classes of children in preference to others, but ultimately to the indefinite public. Nor does the mere fact that a public charity is under the control of those belonging to a particular religious denomination make it any the less a 'purely public charity,' so long as its ultimate object is to help an indefinite number of persons without regard to their religious tenets."

In the ruling case of White *v.* Smith, it was held that a convent building was exempt from taxation, the building in which the teachers live having been erected by voluntary contributions and having been maintained by subsequent contributions, and instruction in the school having been open to all, free of charge, without regard to race, color, creed or condition.

In that case, which is reported in 189 Pa. 222, it was held, quoting from the third syllabus: "A Roman Catholic church owned a lot on which was erected a church, a convent and a school building. The legal title was in the bishop in trust for the congregation. The school building was erected by voluntary contributions and maintained by such contributions. It was open to all, free of charge, without regard to creed, color, race or condition. No revenue was derived from it. The teachers of the school lived in the convent building, which was occupied exclusively by them. They were paid a small salary in addition to the privilege of residence in the convent building. Both buildings when projected, designed and erected were intended for the use to which they were put: *Held*, that the convent building was exempt from taxation."

This view expressed in the syllabus was fully supported by the facts and the opinion of the court which followed.

This brings us down to the next question argued to the court, that is, that this court is without jurisdiction to entertain a bill in equity to restrain the tax collector from collecting the taxes originally assessed against the Sarah Lowe Estate after the triennial assessment of 1925; that is to say, that the plaintiff in this bill has no standing for the reason that the plaintiff's predecessor in title did not take an appeal from the board of county commissioners sitting as a board of revision of taxes and appeal, and that, therefore, the successor in title took this property subject to the assessment as levied by the board of county commissioners sitting as a board of revision of taxes and appeal, and that having had an adequate remedy at law they are now without any right to appeal to a court of equity.

The Act of Assembly of April 15, 1834, § 13, P. L. 509, with relation to the triennial assessment, reads as follows: "At the time and place fixed for the appeal, which in each of the two years after the triennial assessment shall be held in the commissioners' office of the proper county, the commissioners shall attend and hear all persons who may apply for redress and grant such relief as to them shall appear just and reasonable; provided, that the commissioners shall not make any allowance or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, excepting where buildings or other improvements have been destroyed subsquently to such triennial assessment."

The Act of May 8, 1909, § 3 (section 13 being amended), P. L. 491, reads as follows: "At the time and place fixed for the appeal which in each of the two years after the triennial assessment shall be held in the commissioners'

office of the proper county, the commissioners shall attend and hear all persons who may apply for redress and grant such relief as to them shall appear just and reasonable; provided, that the commissioners shall not make any allowance or abatement in the valuation of any real estate in any other year than that in which the triennial assessment is made, excepting where buildings or other improvements have been destroyed, or where coal, ore or other minerals assessed under the triennial assessment have been mined out subsequently to such triennial assessment, in which cases such allowance or abatement shall be made."

Section 1 of this act (section 11 of the Act of April 15, 1834, aforesaid, as amended), in so far as it affects this case, reads as follows: "On or before the first day of April in each of the two years succeeding the triennial assessment, the commissioners of the respective county shall send a transcript of said triennial assessment to the assessor of each ward, township and district therein, together with their precepts, requiring him to . . . make a just return to them, within thirty days after the date of such precept, and to note in such return such alterations in his ward, township or district as may have been occasioned by the transfer or division of real estate, or by the destruction of buildings, or by the mining out of coal, ore or other minerals assessed under the triennial assessment."

Section 2 of this act (section 12 of the Act of April 15, 1834, aforesaid, as amended), in so far as it affects this case, reads as follows: "It shall be the duty of the several assessors in each of the two years succeeding the triennial assessment to give notice to the taxable inhabitants, in like manner as after the triennial assessment, but in the following cases only, namely, in the case of real property, where buildings or other improvements have been destroyed, and where coal, ore or other minerals assessed under the triennial assessment have been mined out since such triennial assessment."

The act regulating appeals from assessments of taxes in this Commonwealth to the Court of Common Pleas, passed April 19, 1889, P. L. 37, reads as follows: "That any owner of real estate or taxable property in this Commonwealth who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property may appeal from the decision of the county commissioners or board of revision and appeal to the Court of Common Pleas of the county within which such property is situated, and for that purpose may present to said court or file in the prothonotary's office, within sixty days after the county commissioners or board of revision and appeal have held the appeals provided for by law and acted on the said assessments and valuations, a petition signed by him, his agent or attorney, setting forth the facts of the case, and thereupon the said court shall proceed, at the earliest convenient time to be by them appointed, of which notice shall be given to the county commissioners of the proper county, or to the board of revision and appeal of the proper city, to hear said appeal and the proofs in the case and to make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable, having due regard to the valuation and assessment made of other real estate in such county or city."

It readily is to be seen from the Act of 1834 that the right of appeal after the triennial assessment was made is not given thereafter except where buildings or other improvements have been destroyed subsequently to the triennial assessment or where coal, ore or other minerals assessed under the triennial assessment have been mined out subsequently to such triennial assessment, in which cases, and only in such cases, may an allowance or an abatement of the assessments be made.

No provision is made in these several acts of assembly for the exemption of property from taxation. The grantor not having appealed from the assessment and taxation as made by the county commissioners sitting as a board of revision of taxes and appeal, the grantee naturally would take the property with the burden of whatever taxation had been levied upon this property, providing, however, it did not fall into the possession of persons, individuals or corporations exempt from taxation under the article of the Constitution of Pennsylvania and the acts of assembly heretofore quoted. This readily is to be seen from the following authorities:

In the case of Moore v. Taylor, 147 Pa. 481, it was held: "The only remedy of taxpayers who feel themselves aggrieved by the action of the board of revision of taxes is by appeal. If no appeal is taken, the decision becomes final and conclusive, not only as to the owners, but also as to those claiming under them by subsequent conveyance. If a specific remedy is provided, it must be pursued."

In the case of the City of Philadelphia v. Pennsylvania Institute, 28 Pa. Superior Ct. 421, it was held: "No appeal having been taken from the assessment of the tax in question, the decision of the tax officers became final and conclusive. It was said in Moore v. Taylor, 147 Pa. 481, that the duty of taxing officers is quasi-judicial, and it is well settled that when the general power to assess exists, the remedy for illegal taxation is by appeal. If none be given, neither the Common Pleas nor this court can reverse the judgment of the taxing officers."

Again, in the case of Stratford v. Franklin Paper Mills Co., etc., 257 Pa. 163, 166, it was held: "Where, in any given case, the taxing authorities have general power to assess the subject-matter involved, an assessment, made in manner and form authorized by law, cannot be questioned or set aside except in the way provided in the statutes."

In the above acts of assembly and the cases cited, it distinctly is pointed out that relief must come to a taxpayer who is aggrieved by an appeal from the decision of the board of county commissioners sitting as a board of revision and appeal as to the assessed valuation of the property. Of course, the act of assembly and the decisions of the court only relate to assessment of taxes where they duly and regularly are assessed and not where they fall within the exempted class provided by the Constitution and the laws of this State. In such cases where taxes duly and regularly have been assessed at a triennial assessment by the board of county commissioners sitting as a board of revision of taxes and appeal and where the time of appeal has gone by and the property afterward falls into the possession of persons or corporations that are exempt from taxation, a different principle applies and a court of equity has jurisdiction to restrain the collection of taxes against such exempt property.

In a case that was decided in our own county (Westmoreland), Byers v. Hempfield Twp., 226 Pa. 278, it was said: "In Banger's Appeal, 109 Pa. 79, we held: 'When a tax is lawfully assessed and there are mere irregularities in the valuation and assessment, the court of equity will not restrain its collection by injunction. But where there is a want of power to tax or there is a disregard of constitutional provisions in the mode of assessment, equity will interfere by injunction to restrain its collection.' In St. Clair School Board's Appeal, 74 Pa. 252, Mr. Justice Mercur, delivering the opinion, said (page 256): 'That a court of equity may enjoin against the collection of a tax levied without authority of law is undoubted. Even when legislative authority is given to tax for a certain purpose, yet if the tax levied is clearly in excess of the sum required for that purpose, its collection may also be enjoined.'"

In the instant case, the taxing authorities were without authority and acted in express violation of the provisions of the Constitution and enabling Acts of 1919 and 1921, *supra*, so that the assessment and levy of taxes are without authority, illegal and void, and, therefore, a proper case of equity jurisdiction to restrain the assessing, levy and collection of taxes on the real estate in question, for the reason that this property has fallen into an ownership that makes it exempt from taxation.

In the case of P. & L. E. R. R. *v.* Allegheny County, 283 Pa. 220, the Supreme Court affirmed the action of the court below, wherein a bill in equity was instituted to enjoin the collection of taxes from the property owned and used by the plaintiff. The lower court had decided that five-sixths of the value of the building in question was taxable, and one-sixth thereof and the land on which it stood was not taxable.

In York Haven Water and Power Co. *v.* Londonderry Township School District, 77 Pa. Superior Ct. 308, the court upheld the same principle in affirming the decision of the court below, where twenty acres of land were exempted from taxation by the court through injunction and the balance of the tract in question was permitted to be assessed.

In D., L. & W. R. R. Co. *v.* Luzerne County, 245 Pa. 515, it was stated by Mr. Justice Elkin: "Equity has power in a proper case to restrain the collection of a tax, but it is a power that should be cautiously exercised, because, as a general rule, there is an adequate remedy at law. Equity will only intervene in such a case where there is either want of power to tax or a disregard of imperative constitutional requirements."

In the case above cited it was made to appear that the taxing authorities had power to make the assessment and levy, and since the irregularties could have been corrected by an appeal to the Court of Common Pleas, it was held that equity was without jurisdiction.

Pittsburgh, etc., Ry. Co. *v.* Stowe Township, 252 Pa. 149, was a bill in equity filed by the railway company to restrain the collection of certain taxes, for the reason that the property was exempt from taxation, the same constituting a part of the capital stock of the railway company—a public service corporation. The question of jurisdiction was raised. It was said by Mr. Justice Mestrezat in sustaining the jurisdiction in equity: "We have no doubt, however, that a bill in equity will lie in this case to restrain the assessment and collection of taxes for local purposes if the taxing authority had no power to levy and collect the taxes. If, as contended by the plaintiff company, the land in question is necessary, essential and indispensable to the exercise of its franchises as a common carrier, and is thereby not subject to taxation for local purposes, the bills in these cases may be maintained. Where there is a want of power to tax, or the tax is levied without authority of law, a bill in equity will lie to restrain its collection. . . . If the tax is lawful, but the manner of collecting it is oppressive or unfair, or there are technical irregularities in the assessment, the remedy is at law and by an appeal from the assessment."

In Byers *v.* Hempfield Township, *supra*, the distinction again is pointed out, reference being made to Arthur *v.* School District, 164 Pa. 410, and Banger's Appeal, 109 Pa. 79. Referring particularly to Arthur *v.* School District, and quoting briefly therefrom: "When they (taxing officers) do this (attempt to enforce the collection of a tax which they have no power to impose), the taxpayer has a clear right to relief by injunction to restrain the illegal act. When the act of the taxing officers complained of is lawful, but is done in an oppressive and unfair manner, the remedy is by appeal. But if the officers

are without jurisdiction and the act is illegal, as in the case before us, the proper remedy is by injunction."

In St. Mary's Gas Co. v. Elk County, 168 Pa. 401, the jurisdiction in equity was sustained. There, it was claimed by the gas company that its property was not liable to assessment, for the reason that it constituted a portion of its capital stock and the corporation was engaged in public service. It was said by the court below, quoting from Banger's Appeal, supra: "It was urged that a court of equity will not interfere to restrain the collection of taxes, but will leave the party aggrieved to his remedy at law. This is true where the tax is lawfully assessed, or where the matters complained of are mere irregularities in the valuation or assessment; but where for want of power to tax or disregard of the Constitution in the mode of assessment, we have no doubt of the power and the duty of a court in equity to interfere.

In American Sunday School Union v. City of Philadelphia, etc., 161 Pa. 307, it was held by the master that the property of the union was wholly exempt. The lower court, however, held that it was not. Mr. Justice Dean was of the opinion that a portion was properly exempt, but stated, in sustaining the action of the court below: "As to whether the proportions exempt and taxable have been correctly determined, that is a question with which we, in this proceeding, have nothing to do. Any complaint on that score can only be on an appeal from the decision of the board of revision of taxes."

Christian Ass'n v. City of Philadelphia, 75 Pa. Superior Ct. 516, is to the same effect. Very properly it was held by Judge Trexler that the property of a charitable institution not used directly for the purpose and in the operation of the charities, but for profit, is not exempt, but that the property of such charities which is directly used in the operation of the charities is exempt, although it may be used in a manner to bring some return and thereby reduce its expenses; but he held that where it is shown that a portion of the premises is taxable, equity is without jurisdiction, it not being within the privilege of a court in equity to determine a valuation for the non-exempt property, that power being vested solely in the board of revision and in the Court of Common Pleas, on appeal.

In cases similar to the present one, where an entire exemption has been justified, relief in equity frequently has been granted.

Albert v. Board of Revision, 139 Pa. 467, is a case which rather would tend to the conclusion that if you claim your property to be exempt because it is devoted to charitable use, you are not entitled to have this question determined by the board of revision. In that case it was contended that All Saints Lutheran Church was entitled to an exemption of certain real estate. The board of revision denied the exemption. An appeal was taken from the action to the Court of Common Pleas. It was urged by counsel for the county that the Act of April 19, 1889, P. L. 37, gave to the Court of Common Pleas "merely the power to reduce the assessment on proofs submitted that it was too high and not to decide that the assessment was illegal." It will be noted from an examination of the language of the act that there is merit in this contention. The appeal was quashed on the argument at bar. It does not appear whether this was done for the reason urged by counsel for the appellees or for the reason which is found in the foot-note, that no exception had been taken in the court below.

The question of the constitutionality of the Act of July 17, 1919, P. L. 1021, which is an act entitled "An act to exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public

charity, and repealing prior acts relating thereto," and, as amended by the Act of April 9, 1921, P. L. 119, has been raised in this case by the defendants, and without these acts it is urged that no relief can be granted in this proceeding. The question, therefore, arises: Has the general assembly exceeded its power in exempting property held by corporations or by individuals and used for purely public charity?

Article IX, section 1, of the Constitution says: "All taxes shall be uniform upon the same class of subjects, . . . and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation . . . institutions of purely public charity."

The general assembly, to put into force and effect this provision of the Constitution, passed the Act of 1919 and the amending Act of 1921, *supra,* wherein the Act of 1921 provided that: "Universities, colleges, seminaries, academies, associations, and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by the public or private charity, . . . be and the same are hereby exempted from all and every county, city, borough, township, road, school and poor tax."

If the general assembly has exceeded its constitutional authority in passing these laws exempting property of purely public charity, then, of course, these acts are uncontitutional and the plaintiff has no standing in court. The authorities on the right of the general assembly to exempt property from taxation lead the court to the opinion that these acts are constitutional and that the plaintiff is entitled to relief in this proceeding, providing the plaintiff has brought himself within the provision of a purely public charity. This we already have determined he has done.

It was said in 12 Corpus Juris, 1153: "As an incident to its power to select the persons and property to be taxed, a state may grant exemptions from taxes imposed by general laws . . . that exemptions from taxation increase the burden placed on property taxed does not show a denial of the equal protection of the law. Thus, exemptions may be granted to mortgagors, charitable corporations and public service corporations."

While the Constitution guarantees the equal protection of the laws to all, yet it does not deprive a state of the power to adjust its system of taxation in accordance with its own ideas of public policy. A state, therefore, may tax certain classes of property to the exclusion of other properties and may prescribe different methods of assessment, different rates of taxation, different means of enforcing the collection of taxes, different penalties for non-payment for different classes of persons and property. And since taxation is largely a question of policy, the general assembly possesses the largest discretion in these matters.

It was said in 12 Corpus Juris, 1152: "The courts will not declare a tax statute void as a violation of the equal protection guaranty so long as the classification or selection made by it is based on a reason, even though, in their opinion, the reason is a poor one and the statute itself is unjust."

In our own State, it was said in 81½ Pa. 211, Kitty Roup's Case, quoting from the syllabus, which fully is supported by the facts and opinion following the syllabus: "The power to classify the subjects of taxation is not taken away from the legislature by the new constitution. The provision, Art. IX, Sec. 1, in the new constitution, that all taxes shall be uniform on the same class of subjects within the territorial authority levying the tax, etc., is merely declaratory of the law as before the adoption of the constitution. Where the legislature has determined what lands belong to several classes,

the courts cannot declare the act void unless the violation of the constitution be so clear, plain and palpable as to preclude doubt or hesitation. Unless the constitution plainly makes void an act of assembly, the constitution acts prospectively, not retrospectively."

Again, in Com. v. Delaware Div. Canal Co., 123 Pa. 594, we find: "The new constitution (1874) does not withdraw the power of classification from the legislature; . . . indeed, the power is necessarily implied in the constitutional provision to which the fourth section of the Act of 1885 is supposed to be obnoxious. The power to impose taxes for the support of the government, subject to the limitations of the constitution, still belongs to the constitution; the selection of the subjects, their classification and the methods of collection are purely legislative matters. When the action of the legislature, with respect to these matters, is not repugnant to the constitution, it would certainly be a case of the grossest inequality which would call for the interventions of the courts: Kelly v. City of Pittsburgh, 85 Pa. 170."

The two cases above cited were quoted with approval in Com. v. Alden Coal Co., 251 Pa. 134. It was said in that case, quoting from page 135: "Classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification."

The evidence in this case is a full answer to everything that has been denied in the answer to the plaintiff's bill, and the authorities cited are decisive of every question of fact and every conclusion of law found by us heretofore. When it once has been determined that the property in question is used in connection with a purely public charity, then it follows that the property is exempt from taxation and that any tax assessed and levied against this property from the date it came into the possession of the plaintiff and from the date it was used in connection with, and solely for the benefit of, a public charity was without authority of the law, and a bill in equity will lie to enjoin the defendants from the collection of any tax that may have been or hereafter may be assessed and levied against this property so long as it is used in connection with, and solely for the benefit of, a public charity. From the facts and the law, it follows that the following decree should be made.

### Decree.

And now, to wit, April 13, 1928, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the County of Westmoreland, the School District of the Borough of Youngwood, the Borough of Youngwood, Mrs. Gertrude Colgan, Tax Collector of the Borough of Youngwood, or her successor in office; Eustace Wingfield, Assessor of the Borough of Youngwood, or his successor in office, and W. C. Henderson, Treasurer of Westmoreland County, or his successor in office, forever be enjoined and restrained from assessing, levying and collecting taxes, assessed and levied in 1926, 1927 and 1928, or any taxes that hereafter may be assessed and levied, against the plaintiff on the property described in the plaintiff's bill of complaint; this decree is entered *nisi*, and, if exceptions are not filed thereto according to the equity rules, to become absolute as provided by said rules; and the plaintiff's counsel then shall prepare a final decree in accordance with our findings of fact and conclusions of law and submit it to the court for approval.

From William S. Rial, Greensburg, Pa.