## Orleans Appeal

194

*Brownback & Reynolds,* for plaintiffs.

*Samuel High, Jr.,* for Cheltenham Township.

*Alexander Knight,* for County Board of Assessment.

*Thomas M. Hyndman,* for Cheltenham School Board.

FORREST, J., June 26, 1956—This is an appeal by the owners of certain real estate situate in Cheltenham Township from the reassessment thereof for a part of a calendar year. The Township of Cheltenham and the school district of the same township have intervened with leave of court. After a full hearing, there are made the following:

*Findings of Fact*

1. Appellants, Alfred P. Orleans, A. H. Weiss and N. H. Tyson, acquired title to certain premises situate at Cheltenham and Ogontz Avenues, Cheltenham Township, this county, by deed dated January 15, 1954, and recorded in deed book 2441, page 71.

2. The Township of Cheltenham is a first class township.

3. The School District of Cheltenham Township is a third class school district.

4. The County of Montgomery is a third class county.

5. The subordinate assessor on or before September 15, 1954, made an unfinished assessment of said premises of $350,000.

6. No appeal from said assessment was taken.

7. On or before January 15, 1955, the Board for Assessment and Revision of Taxes of Montgomery County certified to the secretaries of the said township and school district the assessment of said premises of $350,000 as of January 1, 1955, for purposes of taxation.

8. The township thereupon made a levy upon real estate for 1955 at the rate of 14½ mills which, on the aforesaid assessment, amounted to $5,075.

9. The school district made a levy upon real estate for its fiscal year beginning in 1955 at the rate of 43 mills which, on the aforesaid assessment, amounted to $15,050.

10. A bill for the tax levies specified in paragraphs 8 and 9 hereinabove was sent to appellants on or about July 1, 1955, by the then tax collector of Cheltenham Township and payment was made by appellants on August 26, 1955.

11. The erection of a commercial structure on the premises was completed shortly before September 1, 1955.

12. On August 16, 1955, on August 18, 1955, and on September 26, 1955, the township requested the said board of assessment to reassess the said premises for the year 1955, and on October 12, 1955, the school district made a similar request.

13. The property was reassessed as of September 1, 1955, at $1,500,000.

14. On appeal to the board of assessment, the assessment applicable from and after September 1, 1955, was reduced to $1,425,000.

15. On December 21, 1955, the tax collector of Cheltenham Township furnished appellant with a bill for "additional levy" of "1955 taxes" purportedly made pursuant to act no. 544, session of 1951 and act no. 76, session of 1955 in the sum of $15,408.32 and

$5,195.83 respectively on the "proportionate additional assessment" of $358,333.

16. Neither the township nor the school district requested reassessments of any properties on which buildings were completed in November or December, 1955.

17. At the end of 1955, the township had an unexpended cash balance.

## Discussion

Appellants have raised the question of whether or not section 1709.1 of The First Class Township Code of April 14, 1949, P. L. 453, and section 677.1 of the Public School Code of March 10, 1949, P. L. 30, are unconstitutional or otherwise invalid.

A cardinal tenet of municipal taxation is that, although legislative authority is given to impose a tax for certain purposes and on certain property, the tax levied must not exceed that which is needed or intended to be used to meet a municipal budget, or the requirements of the object of the tax. If the local legislative body violates this rule, injunctive relief is available to the taxpayers: St. Clair School Board's Appeal, 74 Pa. 252 at 256 (1873); Conners' Appeal, 103 Pa. 356, at 357 (1883.) See also Kemble v. Titusville, 135 Pa. 141 (1890), wherein the lower court in its opinion, printed on page 142, stated: "Where there is . . . an assessment beyond the requirements of the object of the taxes, . . . the power of a court of equity to interfere is manifest"; and Ritzman v. Coal Township School Directors, 317 Pa. 271, 276 (1935), in which Mr. Justice Schaffer speaking for the court said: ". . . even when legislative authority is given to tax for certain purposes, if the tax levied is clearly in excess of the sum properly required for that purpose, its collection may be enjoined." "As a matter of course, the rate should be fixed in connection with,

and in view of, the amount of the valuation": Phila. & R. C. & I. Co. v. Schmidt, 254 Pa. 351, 355 (1916).

In this case the budget of neither the township nor the school district contained projected receipts from anticipated taxes to be collected under and by virtue of the pertinent amendatory acts. The taxes to be collected thereunder, therefore, were not earmarked for any new appropriation.

Also, if such procedure were endorsed, the fund might be spent for any purpose. Such practice is not in conformity with our budgetary laws. It is noted that the acts by their express terms provide for the imposition of additional taxes without a levy upon properties by ordinance in due and customary form of law. Municipal taxation, unrelated to requirements of revenue and unsupported by a particular levy, is foreign to the law of Pennsylvania and has universally been condemned by the courts.

"Although various definitions have been announced by the courts, a succinct definition of a tax levy is that it 'is the formal vote or action of the body authorized to make the levy. It has been defined as "the formal and official action of a legislative body determining and declaring that a tax of a certain amount, or of a certain percentage on value, shall be imposed on persons and property subject thereto." To levy a tax is to determine by vote the amount of taxes to be raised. The levying of taxes is not merely the ministerial action of ascertaining the rate per cent.' The levy of a tax is a legislative function. . . .

"Levy and assessment are distinct processes, and, except where otherwise provided by statute, both are essential to taxation": McQuillin, Municipal Corporations, vol. 16, sec. 44.92.

Another objection to these acts is that they are vague, indefinite and ambiguous. "It is true that where a statute is so vague, indefinite and uncertain

that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete and conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative", Sablosky v. Messner, 372 Pa. 47, 52 (1952). "To entitle the Commonwealth to the tax imposed, the words of the statute must be clear and unambiguous": Commonwealth v. PRT Co., 287 Pa. 70, 74 (1926).

The same may be said of taxation by municipal subdivisions of the Commonwealth. Uncertainties of meaning of several portions of the acts are readily apparent and we are at a loss to determine what construction thereof, if any, is the *reasonable construction* presumably intended by the legislature. First, what is meant by *"any construction of a building or buildings . . . .?"* Does the act apply only to *new* constructions or does it include "major improvements" to existing structures? Does it mean that the improvements must have been completed or merely in process in order for properties to be subject to reassessment? Second, what is a "major improvement" as the term is used in the acts? Is this determined on the basis of a certain fraction of original cost or of value, or on the basis of the cost of the improvement, or on some other basis? If $1,000 spent on improvement of a modest dwelling house is a major improvement, is a like sum spent on improvement of a million dollar factory, store or office building a *major improvement?* The term is obviously a relative one and therefore, it would seem that whatever test is ultimately determined upon and used, the result may be to place an additional tax upon some relatively modest improvements, and to exempt from such tax some relatively major improvements. Third, the amendatory acts do not expressly state whether there is to be a credit for a tax previously imposed. If these acts be literally

construed, certain properties will be subject, at least partially, to double taxation.

The provision of the amendatory acts relating to appeals from reassessments is ill conceived and inadequate although these particular appellants are not harmed thereby. Both the amendatory act pertaining to townships and the corresponding amendatory act pertaining to school districts expressly declare that the reassessments are "subject to the right of appeal and adjustment provided by the act of assembly under which assessments are made": 24 PS §6-677.1. Nevertheless, appellants correctly point out that appeals to the board of assessment must be made on or *before November 1*. See Act of June 26, 1931, P. L. 1379, sec. 8, as amended, 72 PS §5349. What are the rights of an owner where his property is reassessed after November 1? Specifically, the Act of 1931, as amended, provides: "After action on such assessments by said board, any dissatisfied taxable may, within thirty days from the final fixing of his assessment and valuation, appeal therefrom to the court of common pleas of the said county in the manner provided by law for appeals from assessments. . . ."

In the above hypothetical case, strictly speaking, the only action of the board would be its direction to the assessor in the township to inspect and reassess. The district assessor's reassessment in effect would constitute the "final fixing of the assessment." However, the Supreme Court declared that under The General County Assessment Law of May 22, 1933, P. L. 853, (not applicable here) the court "has no jurisdiction to entertain an appeal from an assessment unless that assessment was first appealed to the Board of Revision . . .": Susquehanna Collieries Company's Appeal, 335 Pa. 337, 342-3 (1939).

Similarly under the Act of 1931, the only reasonable construction and the one customarily followed is that

the right of appeal to the court exists only upon the final fixing of the assessment by the board of assessment, not upon the making of an assessment by a subordinate assessor. Therefore, in the hypothetical case, a taxpayer would be without a right of appeal which would constitute a denial of the right guaranteed by section 1 of art. IX of the State Constitution providing as follows: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax. . . ."

Another objectionable feature of the amendatory acts is that they specify that "any improvement made during the month shall be computed as having been made on the first of the month". This discriminatory clause cannot be justified even on the ground of expediency, since it would seem to be just as expedient to compute the tax as of the first of the following month. Taxation "'should approximate uniformity and equality as nearly as possible'": Sablosky v. Messner, supra, at page 54.

Appellants contend that the application or manner of enforcement of the act by the township and school district is as to them violative of the aforesaid article IX, sec. 1, of the Constitution of Pennsylvania. Appellants contend that the amendments are unconstitutional as to them for the reason that the township and school district admittedly did not request reassessments of real estate on which buildings were completed in November and December 1955. "We took that loss," the township secretary testified. That clause of the "Fourteenth Amendment of the Federal Constitution which forbids any state to deny the equal protection of the laws to any person within its jurisdiction . . . applies to, and may be violated by, state action of every kind, by any agency or instrumentality, including not only legislative . . . but also . . . executive or administrative, action, at least insofar as in-

tentional and arbitrary, or unjust and illegal, discrimination is concerned": 16 A. C. J. S. 306, 307, Constitutional Law, §505.

Indeed this court has set aside a conviction for violation of an ordinance, for the reason, inter alia, that "the manner of enforcement of the ordinance, and especially against [defendants] as nonresident vendors, constitutes unfair and illegal discrimination in favor of local vendors": Commonwealth v. Major, 2 D. & C. 2d 150, 156-57 (1954). In the Major case, there was evidently an intent to favor residents and to show partiality against nonresidents. In the present case, by relieving from reassessment all properties whereon buildings were completed in November or December 1955, the township and school district discriminated in a different but equally illegal and unconstitutional manner.

Since the acts are illegal for the reasons stated, it is unnecessary to consider whether they are unconstitutional because of defects in their titles.

### Conclusions of Law

1. Section 1709.1 of The First Class Township Code is unconstitutional and otherwise invalid.

2. Section 677.1 of the Public School Code is unconstitutional and otherwise invalid.

3. The reassessment of appellants' property for township and school purposes for 1955 is invalid.

4. The appeal should be sustained.

5. Appellees should pay the costs.

### Decree Nisi

And now, June 26, 1956, the appeal is sustained, costs to be paid by appellees. The taxes paid in excess of those legally due shall be returned to the person or persons who have paid the same or may, at the election of the taxing districts, be set off or credited against any future taxes assessed against appellants

in the same taxing districts. Since this case was heard and considered by only one judge and not by the court en banc, exceptions to this adjudication may be filed within 20 days after notice of the filing hereof. If no exceptions are filed, this decree nisi shall be entered as of course by the prothonotary as the final decree.

## Opinion Sur Exceptions

FORREST, J., February 13, 1957.—This is an appeal by the owners of a certain real estate situate in Cheltenham Township from the reassessment thereof for a part of the calendar year 1955. The Township of Cheltenham and the school district of that township intervened with leave of court. In addition to findings of fact, the hearing judge made conclusions of law that: (1) Section 1709.1 of The First Class Township Code is unconstitutional and otherwise invalid; (2) section 677.1 of the Public School Code is unconstitutional and otherwise invalid; (3) the reassessment was invalid; (4) the appeal should be sustained; and (5) appellees should pay the costs. Accordingly, a decree nisi was entered sustaining the appeal. The intervenors have excepted to all of the conclusions of law and to the decree nisi. No exception to the findings of fact was taken. The facts, therefore, may be restated as follows: The Township of Cheltenham is a first class township; the School District of Cheltenham Township is a third class school district; the County of Montgomery is a third class county. Appellants, Alfred P. Orleans, A. H. Weiss and N. H. Tyson, acquired title to the real estate in question on January 15, 1954. Therafter construction of a commercial structure was commenced. The subordinate assessor on or before September 15, 1954, made an "Unfinished" assessment of said premises of $350,000. No appeal from said assessment was taken. On or before January 15, 1955, the Board of Assessment and Revision of Taxes of Montgomery County

certified to the secretaries of the township and school district the said assessment of $350,000 as of January 1, 1955, for purposes of taxation. The township thereupon made a levy upon real estate for 1955 at the rate of 14½ mills which, on the aforesaid assessment, amounted to $5,075. The school district made a levy upon real estate for its fiscal year 1955-56 at the rate of 43 mills which, on the aforesaid assessment, amounted to $15,050. A bill for the said township and school levies was sent to appellants on or about July 1, 1955, by the then tax collector of Cheltenham Township and payment was made by appellants on August 26, 1955.

The erection of a commercial structure on the premises was completed shortly before September 1, 1955. On August 15, 1955, and twice thereafter the township requested the board of assessment to reassess the premises for the year 1955 and on October 12, 1955, the school district made a similar request. The property was reassessed as of September 1, 1955, at $1,500,000; on appeal this reassessment was reduced by the board of assessment to $1,425,000. On December 21, 1955, the tax collector of Cheltenham Township furnished appellant with a bill for "additional levy" of "1955 taxes" purportedly made pursuant to section 1709.1 of The First Class Township Code and section 677.1 of the Public School Code in the sum of $5,195.83 and $15,408.32 respectively on the "proportionate additional assessment" of $358,333. Neither the township nor the school district requested reassessment of any properties on which buildings were completed in November or December, 1955. At the end of 1955, the township had an unexpended cash balance.

The Act of July 1, 1955, P. L. 248, sec. 1, 53 PS §56709.1, engrafted upon The First Class Township Code as section 1709.1, is as follows:

"Whenever in any first class township there is any construction of a building or buildings after the town-

ship commissioners have prepared a duplicate of the assessment of township taxes and the building is not included in the tax duplicate of the township, the authority responsible for assessments in the township shall upon the request of the township commissioners direct the assessor in the township to inspect and reassess, subject to the right of appeal and adjustment provided by the act of Assembly under which assessments are made, all taxable property in the township to which major improvements have been made after the original duplicates were prepared, and to give notice of such reassessments within ten days to the authority responsible for assessments, the township and the property owner. The property shall then be added to the duplicate and shall be taxable for township purposes at the reassessed valuation for that proportionate part of the fiscal year of the township remaining after the property was improved. Any improvement made during the month shall be computed as having been made on the first of the month. A certified copy of the additions or revisions to the duplicate shall be furnished by the township commissioners to the township treasurer, together with their warrant for collection of the same, and within ten days thereafter the township treasurer shall notify the owner of the property of the taxes due the township."

The Act of January 14, 1952, P. L. 1944, sec. 1, 24 PS §6-677.1, engrafted upon the Public School Code, as section 677.1, is as follows:

"Whenever in third and fourth class school districts there is any construction of a building or buildings after September first of any year and such building is not included in the tax duplicate of the school district, the authority responsible for assessments in the city, borough, township or county shall, upon the request of the board of school directors, direct the assessor in the district to inspect and reassess, subject to the right

of appeal and adjustment provided by the act of Assembly under which assessments are made, all taxable property in the district to which major improvements have been made after September first, and to give notice of such reassessments within ten days to the authority responsible for assessments, the school district and the property owner. Such property shall then be added to the duplicate, and shall be taxable for school purposes at the reassessed valuation for that proportionate part of the fiscal year of the school district remaining after the property was improved. Any improvement made during the month shall be computed as having been made on the first of the month. A certified copy of the additions or revisions to the duplicate shall be furnished by the board of school directors to the tax collector for the district, and within ten days thereafter the tax collector shall notify the owner of the property of the taxes due the school district."

According to their titles, both of these acts are amendatory in nature. However, as will be shown hereafter they contravene established constitutional and statutory precepts as to municipal taxation. In the interest of clarity, various facets of this case will be considered under separate general headings.

## I. Municipal Budget

The Act of June 26, 1931, P. L. 1379, sec. 1, as amended, 72 PS §5342, provides for the creation of a board for the assessment and revision of taxes in third class counties. Section 4 of the act, 72 PS §5345, authorizes the board to appoint subordinate assessors and section 6, 72 PS §5347, states that: "The subordinate assessors shall make the annual assessment of all property. . ." Then, according to section 7, 72 PS §5348, the board "shall, before the fifteenth day of September, examine and revise the said annual assess-

ments and valuations, increasing or decreasing the same as in their judgment may seem proper, and shall add thereto and assess such property . . . as may have been omitted . . . The board shall, before the first day of October, prepare an assessment roll or list of . . . property subject to local taxation, together with the value placed upon . . . each parcel or tract of real property."

In practice, these assessments are prepared in the form of books, a copy of which must be furnished to each interested municipality. Thus, The General County Assessment Law of May 22, 1933, P. L. 853, sec. 516, 72 PS §5020-516, requires the county commissioners or the board "on or before the first day of April of each year . . . [to] furnish to the township commissioners of each township of the first class . . . a properly certified duplicate of the last adjusted valuation of all real estate . . . made taxable for county purposes . . . Such duplicates shall state the . . . valuation, description . . . of property. . ."

Thus, having access to information as to the aggregate of the assessments: "The board of township commissioners of townships shall each year, within sixty days after the first Monday of January, and, at least thirty days prior to the adoption of the annual budget, prepare a proposed budget . . . The tax levied by the township authorities shall be fixed at such figure within the limit allowed by law, as, with all other sources of revenue, will meet and cover said appropriations": The First Class Township Code, sec. 1701, as last amended by the Act of April 14, 1949, P. L. 453, sec. 1, 53 PS §56701.

The corresponding provision of the Public School Code of March 10, 1949, P. L. 30, sec. 687, as amended, provides that: "The board of school directors of each [such] district . . . shall, annually, at least thirty (30) days prior to the adoption of the annual budget,

prepare a proposed budget of the amount of funds that will be required . . . for the following fiscal year." The board is required to "adopt . . . budget" after giving certain notice: Public School Code, as amended, sec. 687, 24 PS §6-687.

A discussion of the nature and function of a municipal budget is found in Rose Township v. Hollobaugh, 179 Pa. Superior Ct. 284, 291-2 (1955):

"The budget required is more than a mere estimate of probable revenues and expenditures. It is a method whereby expenditures are controlled and limited during the fiscal period by designating the amount of money legally at the disposal of the supervisors and the purpose for which it may be expended. Kistler v. Carbon County, 154 Pa. Superior Ct. 299, 301, 302, 35 A. 2d 733 (1943). These budget provisions are not directory but 'in the highest degree mandatory.' Leary v. Philadelphia, 314 Pa. 458, 472, 172 A. 459 (1934)."

Page 293: "It is vital for the good administration of municipal affairs for its officials to budget expenditures for the necessary functions and thereby determine the amount of tax necessary for the operation of the municipality for the ensuing year. It was for the purpose of protecting the public against extravagance and waste in local government that the budget provisions were made more stringent over the years both by statutes and court decisions."

Page 294: "If we were to decide that a municipality could enact new tax legislation and appropriate the proceeds therefrom after the budget was adopted, we would, to a great extent, destroy the value of the provisions relating to budgets."

Page 295: "The very purpose of a budget is to prevent a situation such as probably happened in this very case. After the budget was adopted the supervisors suddenly discovered a new source of taxation which had not previously existed in the township. Had not

this new source of revenue been discovered, the township undoubtedly would have operated according to the budget. But with new sources of revenue available, new and increased expenditures were planned. The budget increased although the need for expenditures probably did not.

"This is the reverse procedure from that which is contemplated in the function of a municipal budget. The preparation of a municipal budget contemplates a determination of the necessary expenditures and then the imposition of the tax required to meet them."

Here the township and school board adopted budgets containing no estimated receipts from the properties reassessed under the pertinent amendments of The First Class Township Code and Public School Code. These municipal bodies by seeking under the new acts to obtain tax moneys not contemplated prior to the adoption of the budget, are thereby in effect attempting to destroy the statutory budgetary provisions by which they are governed. This will not be permitted.

## II. *Tax Rates Are Limited to Budgetary Requirements*

A cardinal tenet of municipal taxation is that, although legislative authority is given to impose a tax for certain purposes and on certain property, the tax levied must not exceed that which is needed or intended to be used to meet a municipal budget, or the requirements of the object of the tax. If the local legislative body violates this rule, injunctive relief is available to the taxpayers: St. Clair School Board's Appeal, 74 Pa. 252, at p. 256 (1873); Conners' Appeal, 103 Pa. 356, at 357 (1883). See also Kemble v. Titusville, 135 Pa. 141 (1890), where the lower court in its opinion, at page 142, stated: "Where there is . . . an assessment beyond the requirements of the object of the taxes, . . . the power of a court of equity to interfere

is manifest"; and Ritzman v. Coal Township School Directors, 317 Pa. 271, 276 (1935), in which Mr. Justice Schaffer speaking for the court said: ". . . even when legislative authority is given to tax for certain purposes, if the tax levied is clearly in excess of the sum properly required for that purpose, its collection may be enjoined." "As a matter of course, the rate should be fixed in connection with, and in view of, the amount of the valuation": Phila. & R. C. & I. Co. v. Schmidt, 254 Pa. 351, 355 (1916). In this case the budget of neither the township nor the school district for 1955 contained projected receipts from anticipated taxes to be collected under and by virtue of the pertinent amendatory acts. As a matter of fact the budget for the township could not have contained an item for such projected receipts for the reason that the Act of 1955 had not been passed.

### III. *The Power of a Municipality to Tax Must Be Exercised By a Levy*

The power of a municipality to tax must be exercised by a levy.

". . . in the case of local taxation there must commonly be two distinct acts of legislation: first, that by the state giving the power to tax, and second, that by the local legislative . . . authority, laying the tax under the power so given": Cooley on Taxation (2d ed.) page 324.

" 'A levy by the proper legislative authorities is the first step in taxation, and no taxes can be assessed or collected unless and until a legal levy is ordered by such authorities, and therefore until such levy has been ordered no taxes accrue': 61 C. J. 552": Commonwealth v. Chester County Light & Power Co., 339 Pa. 97, 99 (1940).

"Although various definitions have been announced by the courts, a succinct definition of a tax levy is that

it 'is the formal vote or action of the body authorized to make the levy. It has been defined as "the formal and official action of a legislative body determining and declaring that a tax of a certain amount, or of a certain percentage on value, shall be imposed on persons and property subject thereto." To levy a tax is to determine by vote the amount of taxes to be raised. The levying of taxes is not merely the ministerial action of ascertaining the rate per cent.' The levy of a tax is a legislative function. . . .

"Levy and assessment are distinct processes, and, except where otherwise provided by statute, both are essential to taxation": McQuillin, Municipal Corporations, vol. 16, sec. 44.92.

The First Class Township Code provides that: "The board of township commissioners may levy taxes upon all property . . . within the township made taxable for township purposes, as ascertained by . . . the assessors of the several counties . . . for the year for which the township taxes are levied. . . .": Section 1709 of the code, as amended by Act of January 14, 1952, P. L. 2019, sec. 1, 53 PS §56709. The Public School Code provides: ". . . all school taxes shall be levied . . . by the board . . . for the ensuing fiscal year . . .": Public School Code, as amended, sec. 672, 24 PS §6-672. Section 1709 of The First Class Township Code and section 671 of the Public School Code prescribe the accepted mode of taxation by levy. The amendatory acts ignore the practice of taxation by levy. We are in sympathy with the efforts to impose a fair share of real estate taxation upon properties which have been improved in the course of any given year. However, unless a uniform mode of imposing taxation on a particular kind of property is adhered to, it is easy to perceive that charges of favoritism and discrimination soon may arise. It is noteworthy that the acts evidently leave it within the option and arbi-

trary exercise of discretion on the part of each municipality whether or not a reassessment of properties shall be made.

### IV. *Vagueness, Indefiniteness and Uncertainty of the Acts*

Another invalidating feature of these acts is that they are vague, indefinite and ambiguous. "It is true that where a statute is so vague, indefinite and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete and conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative." Sablosky v. Messner, 372 Pa. 47, 52 (1952). See also Willcox v. Penn Mutual Life Ins. Co., 357 Pa. 581 (1947); Murray v. Philadelphia, 364 Pa. 157 at 176 (1950). " 'To entitle the Commonwealth [or its subdivisions] to the tax imposed, the words of the statute must be clear and unambiguous' ": Commonwealth v. Philadelphia Rapid Transit Co., 287 Pa. 70, 74 (1926) (parenthetical words supplied).

(1) The first problem in this connection is, what is meant by "any construction of a building after the township commissioners have prepared a duplicate of the assessment of township taxes" (or, in the case of the School Code, "after September first of any year") ? Does this apply only to new construction after such specified time or does it apply to new construction begun before such time and continuing thereafter?

(2) The term "major improvements" is nowhere defined. Is this determined on the basis of a certain fraction of original cost or of value, or on the basis of cost of the improvement, or on some other basis? If $1,000 spent on improvement of a modest dwelling house is a major improvement, is a like sum spent on improvement of a million dollar factory, store or office

building a major improvement? To ask the question is to answer it. The term is obviously a relative one and, therefore, it would seem that whatever test is ultimately determined upon and used, the result may be to impose an additional tax on some relatively modest improvements and to exempt from such tax some relatively major improvements of a much greater cost and value.

(3) The amendatory acts do not expressly allow a credit for a tax previously imposed. If these acts be literally construed, certain properties will be subject, at least partially, to double taxation. However, it may correctly be contended that the legislative purpose was not to permit double taxation. Double taxation is never to be implied unless the implication is unavaidable. The "presumption of law is against double taxation and continues until overcome by express words of the legislature showing such intent": Sablosky v. Messner, supra, page 51.

(4) As far as the Act of 1952, supra, amending the Public School Code is concerned, the references therein to "September first of any year" and "September first" leave it entirely to conjecture as to whether the act has reference to construction after September first of the year preceding the particular tax year or after September first of the particular tax year.

Enough has been said to demonstrate that, in general and in particular as applied to plaintiffs, these acts are so vague, indefinite and uncertain as to render them invalid. See Stanley Company v. Boardman, 46 Dauph. 359 (1938).

### V. Unconstitutitonality of the Acts

The defects in these acts are not only procedural and formal, but some are fundamental and the acts must be stricken down for. violation of constitutional rights.

(1) . The provision of the amendatory acts relating to appeals from reassessments is ill conceived and inadequate although these particular appellants are not harmed thereby. Both the amendatory act pertaining to townships and the corresponding amendatory act pertaining to school districts expressly declare that the reassessments are "subject to the right of appeal and adjustment provided by the act of assembly under which assessments are made." Nevertheless, appellants correctly point out that appeals to the board of assessment must be made on or before November 1 (see Act of June 26, 1931, P. L. 1379, sec. 8, as amended, 72 PS §5349). What are the rights of an owner whose property is reassessed after November 1? Specifically, the Act of 1931, as amended, provides: "After action on such assessments by said board, any dissatisfied taxable may, within thirty days from the final fixing of his assessment and valuation, appeal therefrom in the court of common pleas of the said county in the manner provided by law for appeals from assessments . . ." 72 PS §5350.

In the above hypothetical case, strictly speaking, the only action of the board would be its direction to the assessor in the township to inspect and reassess. The district assessor's reassessment in effect would constitute the "final fixing of the assessment." However, the Supreme Court declared that under The General County Assessment Law of May 22, 1933, P. L. 853, the court "has no jurisdiction to entertain an appeal from an assessment unless that assessment was first appealed to the Board of Revision . . .": Susquehanna Collieries Company's Appeal, 335 Pa. 337, 342-3 (1939). Similarly under the Act of 1931, the only reasonable construction and the one customarily followed is that the right of appeal to the court exists only upon the final fixing of the assessment by the board of assessment, not upon the making of an assessment

by a subordinate assessor. Therefore, in the hypothetical case, a taxpayer would be without a right of appeal.

Counsel for the school board contends that the right of appeal is preserved by section 11 of the Act of.June 26, 1931, P. L. 1379, 72 PS §5350b. However, that section is inapplicable. It does not pertain to appeals, but to the manner of service of notices required by the act, and provides, inter alia, that: "No defect in service of any such notice shall be sufficient ground for setting any assessment aside, but, upon proof thereof being made, the taxable person shall have the right to a hearing before said board relative to said assessment, with the same right of appeal from its decision as provided in section eight of this act."

(2) Another objectionable feature of the amendatory acts is that they specify that: "Any improvement made during the month shall be computed as having been made on the first of the month": 24 PS §6-677.1; 53 PS §56709.1. Perfect equity in taxation is unobtainable in all cases and sometimes a "rule of thumb" may be sanctioned as a matter of practicality and convenience. "It must be remembered that taxation is a practical and not a scientific problem and because of practical conditions or difficulties, or because of the nature of the business or property, perfect uniformity and absolute equality in taxation can at times not be attained": Goldstein v. Pittsburgh School District, 372 Pa. 188, 194-5 (1952). However, a deliberate incorporation of an inequity patent on the face of the statute should not be countenanced, at least not in a case of such magnitude as this, where for each day in which the inequity is perpetrated there will be a substantial addition to the taxpayers' burden. Taxation " 'should approximate uniformity and equality as nearly as possible' ": Sablosky v. Messner, supra, at page 54. The decision in Goldstein v. Pittsburgh School Dis-

trict, supra, cited by counsel for the school district upheld a mercantile tax imposed on a calculation of estimated receipts, but this case does not involve a tax calculated on any estimate.

(3) The applicability of these acts by their express terms is limited to cases "whenever . . . there is any construction of a building or buildings . . ." after September 1 of any year (or as to townships, after the duplicates were prepared), but the increased assessment and tax is imposable, at the discretion of the municipality, on "all taxable property . . . to which major improvements have been made after September 1" (or, as to townships, after the duplicates were prepared). It appears that storage tanks, pipelines and reservoirs and other improvements, none falling within the definition of a building, might be constructed with resultant increase of real estate values and the acts nevertheless would not apply unless there was construction of a building. Such a distinction is unreasonable and invalid.

"Article IX, section 1, of the Constitution of Pennsylvania, provides, 'All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; . . .' This means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class": Allentown School District Mercantile Tax Case, 370 Pa. 161, 167-168 (1952); Goldstein v. Pittsburgh School District, supra, page 195.

(4.) Appellants contend that the application or manner of enforcement of the act by the township and school district is as to them violative of the aforesaid article IX, sec. 1, of the Constitution of Pennsylvania.

Appellants contend that the amendments are unconstitutional as to them for the reason that the township and school district admittedly did not request reassessments of real estate on which buildings were completed in November and December, 1955. "We took that loss," the township secretary testified.

That clause of the "Fourteenth Amendment of the Federal Constitution which forbids any state to deny the equal protection of the laws to any person within its jurisdiction . . . applies to, and may be violated by, state action of every kind, by any agency or instrumentality, including not only legislative . . . but also . . . executive or administrative, action, at least in so far as intentional and arbitrary, or unjust and illegal, discrimination is concerned": 16A C.J.S. 306, 307, Constitutional Law, §505. Indeed, this court has set aside a conviction for violation of an ordinance, for the reason, inter alia, that "the manner of enforcement of the ordinance, and especially against [defendants] as nonresident vendors, constitutes unfair and illegal discrimination in favor of local vendors". Commonwealth v. Major, 2 D. & C. 2d 150, 156-157 (1954). In the Major case there was evidently an intent to favor residents and to show partiality against nonresidents. In the present case, by relieving from reassessment all properties whereon buildings were completed in November or December 1955, the township, if not the school district, discriminated in a different but equally illegal and unconstitutional manner.

This view is supported by the case of Yick Wo v. Hopkins, 118 U. S. 356 (1885), which declares that the administration of a law, which on its face is impartial, so that it becomes discriminatory and unjust between persons in similar circumstances is a denial of equal justice within the prohibition of the fourteenth amendment of the Constitution which guarantees equal protection of the law.

For the reasons stated hereinabove, all of the exceptions should be dismissed.

And now, February 13, 1957, the exceptions are dismissed and it is ordered that the decree nisi shall be entered by the prothonotary as the final decree.